# CONSAUL ET AL, ADMINISTRATORS OF MOY-ERS, *v.* CUMMINGS, ADMINISTRATOR OF EDMONDS.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 38. .rgued November 6, 1911.—Decided December 11, 1911.

The law implies equality between partners and does not favor claims of the survivor for services rendered after dissolution of the firm and which lead to efforts to prove disparity.

Each partner is bound to devote himself to the firm's business and there is no implied obligation on the part of the other partners to pay him more than his proportion for performing his duty; and this rule applies to a surviving partner completing the business of the firm.

While equity at times makes exceptions to the general rule that a surviving partner is not allowed compensation for winding up the affairs of the copartnership, this case does not fall within such exceptions.

A limited partnership formed by two lawyers to prosecute claims against the Government, one of whom had already secured the claims and the other of whom was to attend to the prosecution, *held* not to be one in which either the lunacy or death of the former would amount to a dissolution or entitle the survivor to extra compensation for prosecuting the claims after such events to a successful conclusion, the partnership gains being payable *in solido* and dependent upon success, and the record showing that the deceased partner did not at any time aid materially in the prosecution of the claims and was not expected to.

A surviving partner of a law firm prosecuting claims under powers of attorney from the claimants to the deceased partner cannot retain the business individually and claim that the powers to the deceased partner were revoked by his death; he must account to the representatives of the deceased partner for his share of the fees.

If the defendant should have previously accounted, but wantonly refused or neglected so to do, interest is properly chargeable from the filing of the bill.

If a defendant did not except to a ruling fixing a date for calculating interest on an account, and asked to be allowed interest on advances from the same date, he is deemed to have acquiesced in the ruling, and cannot complain of it in this court.

A curator and administrator of a deceased member of a partnership, who has no power of sale, is not chargeable with laches because he waits until the surviving partner has realized the assets of the copartnership before demanding an account. The interests of his ward and intestate are founded in contract and cannot be destroyed, by mere non-action.

33 App. D. C. 132, affirmed.

THE facts in these cases are fully set out in the decisions on the various appeals reported in 17 App. D. C. 269; 24 Id. 36; 30 Id. 540; 33 Id. 132. Only what is material to an understanding of the assignments of error need be now stated.

George B. Edmonds was an attorney in Washington, practicing in the Court of Claims. Under agreements to pay contingent fees, and giving him power of substitution, he represented a large number of clients, who had claims pending in that court and before Congress. A schedule was attached to a contract made in 1888 by Edmonds with Gilbert Moyers, also an attorney, in which they agreed "as special partners to prosecute these claims in Congress and before the court." The fees and expenses were to be equally divided. Edmonds also stipulated therein that said "Moyers shall represent and be associated with me in the prosecution of the said claims as joint attorney of record."

Edmonds was adjudged a lunatic in 1891, and Cummings was appointed his committee. There had only been a few collections, and most of the claims were still pending at the time of Edmonds' death in 1896. By virtue of appropriations made in March, 1899, Moyers collected a large amount in May, 1899. Cummings made a demand on him for a settlement, and Moyers several times promised to make a statement, explaining that the delay

was caused by bad health. Nothing having been done,
Cummings was appointed administrator of Edmonds on
August 22, 1899, and on September 16, 1899, filed a bill
for an accounting. Among other things Moyers, in his
answer, claimed that Edmonds, in consideration of money
advanced by him in ignorance of the lunacy proceedings,
had conveyed to Moyers all his interest in the fees that
might be collected. This transfer he claimed operated as
a dissolution of the firm. The court ordered an account-
ing; Moyers appealed. That decree having been affirmed,
the case was referred to a master. He found that Edmonds
had not sold his interest in the fees and that the partner-
ship had not been dissolved, but allowed Moyers credit
for the amount advanced in 1892. He found that the fees
earned aggregated about $26,000, and after deducting the
expenses and allowing Moyers credit for the advances,
found balance in favor of complainant, with interest
thereon, from September 16, 1899, the date Moyers should
have accounted. Moyers on the appeal offered no objec-
tion to this award of interest, but claimed that under the
same rule interest should have been allowed him on the
advances made in 1892. The Court of Appeals sustained
this view, and directed that in restating the account inter-
est should be allowed Moyers on these advances from, say,
January, 1893, to September 16, 1899. On a subsequent
hearing the account was thus restated. On a later appeal
the court held that, as Moyers had taken no exception,
this ruling was conclusive. The court also held that
Moyers was entitled to credit for expenses advanced in
claims which were finally disallowed by the court.

During the litigation other claims were pending in the
Court of Claims. But in view of the controversy over the
fees Moyers abandoned some of them, and on his advice a
few of the claims were put in the hands of attorneys as-
sociated with Moyers in business. They made collection,
but the master charged Moyers with the proportion of the

fees thereon due Edmonds under the original contract. Other claims were withdrawn by clients and placed with attorneys not connected with Moyers in business. Congress passed additional acts of appropriation, by virtue of which some of the other claims in the schedule were collected. These items were included in the master's final statement of account. This was approved by the chancellor and affirmed on appeal. The case is here on numerous assignments of error, all of which have been abandoned except those in which Moyers' administrators claim that (1) he should have been allowed compensation for services after the dissolution of the firm; (2) that he should not have been charged with interest from September 16, 1899, but only from the final decree of November, 1908, when for the first time the amount due was made certain, and (3) the refusal to dismiss the bill on the ground of complainant's laches.

*Mr. A. S. Worthington* and *Mr. Charles F. Consaul,* with whom *Miss Ida N. Moyers* was on the brief, for appellants:

The special partnership agreement between Moyers and Edmonds was dissolved either by the adjudicated insanity of Edmonds, in 1891, or by his death, in 1896, and the utmost measure of recovery by the estate of Edmonds would be one-half the reasonable value of services rendered by the special partnership prior to such dissolution of the special partnership, less one-half partnership expenses incurred and less advances made by Moyers to Edmonds.

The death of a partner dissolves a partnership. *Scholefield* v. *Eichelberger,* 7 Pet. 586; *Burwell* v. *Cawood,* 2 How. 560, 576. See also to same effect *Davies* v. *Christian,* 15 Gratt. (Va.) 11; *Gratz* v. *Bayard,* 11 S. & R. (Pa.) 41; *Knapp* v. *McBride,* 7 Alabama, 19; *Goodburn* v. *Stevens,* 5 Gill (Md.), 1; *Williamson* v. *Wilson,* 1 Bland (Md.), 418; *Griswold* v. *Waddington,* 15 Johns. (N. Y.) 82; *White*

v. *Union Ins. Co.*, 1 N. & McC. (S. C.) 559; Story on Partnership, 7th ed., § 317; Parsons on Partnership, 4th ed., § 342; *Ames* v. *Downing*, 1 Bradf. (N. Y.) 321.

The surviving partner is entitled to compensation for special services rendered in realizing the assets of the partnership after dissolution. *Babbitt* v. *Riddell*, 1 Grant's Cases (Pa.), 161; *Justice* v. *Lairy*, 19 Ind. App. 272, 277; *Denver* v. *Roane*, 99 U. S. 355; *Starr* v. *Case*, 59 Iowa, 491; *Rowell* v. *Rowell*, 122 Wisconsin, 1, 24; *Lamb* v. *Wilson*, 3 Nebraska (Unoff.), 496, 505; 98 N. W. Rep. 37; *Vanduzer* v. *McMillan*, 37 Georgia, 299. See also *Newell* v. *Humphrey*, 37 Vermont, 265, 270; *Royster* v. *Johnson*, 73 N. Car. 474; *Zell's Appeal*, 126 Pa. St. 329, 333; *Maynard* v. *Richards*, 166 Illinois, 466; Bates on Partnership, § 773; *Schenkl* v. *Dana*, 118 Massachusetts, 236, citing *Willett* v. *Blanford*, 1 Hare, 253; Lindley on Part., 3d ed., 1034 *et seq.;* Story on Part., 6th ed., §§ 322, 343, 350; *Cameron* v. *Francisco*, 26 Oh. St. 190; *Thayer* v. *Badger*, 171 Massachusetts, 279, citing *Turnball* v. *Pomeroy*, 140 Massachusetts, 117; *Robinson* v. *Simmons*, 146 Massachusetts, 167, 176.

When Edmonds died he had no capital invested in the partnership business. His powers of attorney and fee contracts were revoked and nullified by his death. The capital could not consist of his services because he was dead and could render no services. His estate never rendered any services, after his death, so his estate had nothing in the partnership or its earnings after his death. *Condon* v. *Callahan*, 115 Tennessee, 285, 291, citing *Brown* v. *Tastet*, 1 Jacob, 284; *Cameron* v. *Francisco*, 26 Oh. St. 190; *Newell* v. *Humphrey*, 37 Vermont, 265.

If the surviving partner in a commercial partnership happened to be a lawyer, and if, in order to realize on firm assets, he had to bring suits and conduct them as an attorney at law, he would be entitled to charge the same commission as any other lawyer would have charged.

And see where this court intimates that in winding up partnerships between lawyers and other professional men, where the profits of the firm are the result solely of professional skill and labor, the surviving partner may be entitled to compensation. *Denver* v. *Roane*, 99 U. S. 355; *Sterne* v. *Goep*, 20 Hun, 397; *Osment* v. *McElrath*, 68 California, 466.

As Edmonds' authority, conferred by powers of attorney, died when Edmonds died, there remained no authority vested either in Edmonds or his employé, Moyers, to further proceed with his claims. Therefore Moyers after the death of Edmonds acted under direct employment by the claimants.

Any relation of employer and employé existing between Edmonds and Moyers terminated at the death of Edmonds; Mecham on Agency, § 249; and see *Gage* v. *Allison*, 2 Am. Dec. 682; *Merrick's Est.*, 8 Watts & Serg. (Pa.) 402; *Adriance* v. *Rutherford*, 57 Michigan, 170.

It was error to allow any interest to the Edmonds' estate on any sum found to be due as the result of the proceedings had, from a date prior to the entering of the final decree pursuant to the mandate of this court.

Interest is not properly allowable on running or open account or on accounts which are unliquidated, or concerning which there is an honest dispute between the parties, and is not usually allowable on partnership accountings until a balance has been struck. *Gyger's Appeal*, 62 Pa. St. 73; *Clark* v. *Clark*, 46 Connecticut, 586; *Imperial Hotel Co.* v. *Claflin Co.*, 175 Illinois, 119, 124; *Pieser* v. *Minkota Milling Co.*, 94 Ill. App. 595; *Henderson Cotton Mfg Co.* v. *Lowell Machine Shop*, 86 Kentucky, 668; *Sweeney* v. *Neely*, 53 Michigan, 421; *Houston* v. *Crutcher*, 31 Mississippi, 51; *Holden* v. *Peace*, 39 N. Car. 223; *Dexter* v. *Arnold*, 3 Massachusetts, 284; *Pengra* v. *Wheeler*, 24 Oregon, 532; *Grubb's Appeal*, 66 Pa. St. 117; *Stearns* v. *Mason*, 24 Gratt. 484; *South Carolina* v. *Port Royal R. R.*

*Co.,* 89 Fed. Rep. 565, 574; *Haskell* v. *Vaughan,* 5 Sneed (Tenn.), 618.

A partner cannot be heard to allege that the other partner owed him anything, after dissolution, until there has been a "general settlement," which means the striking of a balance. *Rogers* v. *Yarnell,* 51 Arkansas, 198; *Heald* v. *Handy,* 89 California, 632; *Raymond Bros.* v. *Williams & Chapman,* 40 Iowa, 117; *Williams* v. *Hersey,* 17 Kansas, 18; *Ory* v. *Winter,* 6 Mart. N. S. (La.) 606; *Flannery* v. *Anderson,* 4 Nevada, 437; *Edwards* v. *Dargan,* 30 S. Car. 177; *Stamps* v. *Tenn. Co.,* 59 S. W. Rep. (Tenn.) 769; and in *Ryan Drug Co.* v. *Hvambsahl,* 92 Wisconsin, 62; interest was allowed, but on the theory that the accounts should be deemed "accounts stated," concerning which there was no dispute between the parties.

The bill should have been dismissed for lack of equity in view of the obvious laches of the complainant. *Baker* v. *Cummings,* 169 U. S. 189.

The silence of Edmonds' representative which extended over the period beginning with January 31, 1891, and ending in the spring of 1899—over eight years— operated to the great prejudice of Moyers; operated in its real effect, according to the courts below, to cause Moyers to carry with him as a partner, the lunatic up to 1896, and the decedent after that date. This is surely unconscionable, and should not be permitted by a court of equity. *Abraham* v. *Ordway,* 158 U. S. 416, 421; *McKnight* v. *Taylor,* 1 How. 161. See also *Cholmondeley* v. *Clinton,* 2 Jac. & Walk. 1; *Kane* v. *Bloodgood,* 7 Johns. Ch. Rep. 93; *Decouche* v. *Saratiere,* 3 Johns. Ch. Rep. 190; *Prevost* v. *Gratz,* 6 Wheat. 481; *Hughes* v. *Edwards,* 9 Wheat. 489; *Willison* v. *Matthews,* 3 Pet. 44; *Miller* v. *McIntire,* 6 Pet. 61, 66; *Bowman* v. *Wathen,* 1 How. 189.

Moyers, as surviving partner, after such a lapse of time cannot even be charged as trustee if he were one. *Badger* v. *Badger,* 2 Wall. 87, 96; *Norris* v. *Haggin,* 136 U. S. 386.

When a party relies on ignorance of facts material to his rights as an excuse for laches or delay in asserting them, he must show *why* he was so long ignorant, and acquit himself of all knowledge of facts which would even put him on inquiry. *Badger* v. *Badger*, 2 Wall. 87; *Stearns* v. *Page*, 7 How. 819; *Ware* v. *Galveston City Co.*, 146 U. S. 102; *Moore* v. *Greene*, 19 How. 69; *Beaubien* v. *Beaubien*, 23 How. 190; *New Albany* v. *Burke*, 11 Wall. 107; *Foster* v. *Mansfield &c. R. Co.*, 146 U. S. 88; *Godden* v. *Kimmell*, 99 U. S. 201; *Wood* v. *Carpenter*, 101 U. S. 135; *Hardt* v. *Heidweyer*, 152 U. S. 547; *Hammond* v. *Hopkins*, 143 U. S. 224.

*Mr. Charles Cowles Tucker*, with whom *Mr. J. Miller Kenyon* was on the brief, for appellee.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

In this accounting of the affairs of a special partnership between attorneys at law, the survivor claims compensation for services rendered after dissolution of the firm.

Claims of this sort are not favored. They lead to efforts to prove a disparity between the partners, when the law implies equality. They necessitate a balancing of the value of the work of each in securing the business and earning the profits, as well as a comparison of the time they may spend on the matters under consideration. Each partner is bound to devote himself to the firm's business, and there is no implied obligation that for performing this duty he should be paid more than his proportionate share of the gains. Neglect by one to do his part may be of such character as to justify a dissolution. But as long as the firm continues there is usually no deduction because one partner has not been as active as the other. The same is true where death prevents either of the part-

ners from performing his contract. The law did not permit him to appoint a substitute, nor can his personal representative, no matter how well qualified, assist in winding up the affairs of the firm. Whether that be considered a right or duty, it is in either event cast on the survivor. In performing it he only carries out an obligation implied in the partnership relation, and is therefore entitled to no compensation for thus doing what he was bound to do and what would have been imposed on the other had the order of their death been different. To allow the survivor compensation wherever he continues the business would be to offer an inducement to delay the settlement which ought to be made as soon as possible.

To this general rule there are exceptions, where, under peculiar circumstances, the principles of equity entitle the survivor to compensation. *Thayer* v. *Badger, Admr.*, 171 Massachusetts, 279. Thus, where by authority of law, or under a power in the will, the personal representative consents that the business may be continued by the survivor, the estate must pay for such additional services. Or, where without such consent, and at his own risk, the survivor continues the business and makes a profit, the estate is bound to allow reasonable compensation if it elects to share in the gains thus made.

So where a member of a firm, by his voluntary act, dissolved the partnership the partner who continued the business was allowed compensation for performing services in which he had the right to have expected the continued assistance of the other. Extra compensation has also been allowed in a few cases where, in order to realize on the assets, it was absolutely necessary for the survivor to continue the business beyond the reasonable time allowed for winding up its affairs. See *Justice* v. *Lairy*, 19 Ind. App. 272; *Zell's Appeal*, 126 Pa. St. 329; *Schenkl* v. *Dana*, 118 Massachusetts, 236; *Gray* v. *Hamil*, 82 Georgia, 375; *Beatty* v. *Wray*, 19 Pa. St. 516; *Cameron* v. *Francisco*,

26 Oh. St. 190; *Robinson* v. *Simmons*, 146 Massachusetts, 167; *Holmes* v. *Higgins*, 1 Barn. & C. 74. Then, too, there is a suggestion in *Denver* v. *Roane*, 99 U. S. 355, 359, that there may be "a different rule to cases of winding up partnerships between lawyers and other professional men, where the profits of the firm are the result solely of professional skill and labor."

This point is not involved and on it no ruling is made, because we are not dealing with questions between the administrator of the deceased and the surviving member of an ordinary law partnership, where the latter conducts to a conclusion the business of the firm, under circumstance, where there may be a right from time to time to call on the client for compensation for the value of services rendered and even though the case is finally lost. Here the agreement related solely to litigation in which compensation was for success and not for the value of services rendered. Such payment was to be *in solido*, and the partners agreed that the fees should be divided *in solido*.

Moyers insists, however, that the peculiar facts of this case bring him within the other exceptions pointed out above; that when Edmonds was adjudged a lunatic, in 1891, the firm was dissolved; that with the knowledge of Cummings, who was acting as Edmonds' committee, Moyers continued to prosecute the claims, paid out large sums for necessary expenses, and, in spite of probable failure, rendered valuable services, which finally earned the fees now to be divided. He claims that in equity and good conscience he should be paid reasonable compensation for this work, in which Edmonds rendered no assistance.

Moyers put in his services against the claims turned over to the firm by Edmonds, who stipulated that Moyers should *represent* him, and to that end "be associated in the prosecution of the claims as joint attorney of record." Edmonds rendered little or no assistance and apparently was not expected to do so, for Moyers himself testified that

the contract was "an employment of me to attend to certain business for him in the Court of Claims in regard to certain cases. It might be styled a limited partnership. It was not a general partnership." In prosecuting the claims and collecting the money Moyers therefore only did what he contracted to do, and is not entitled to compensation beyond that set out in the agreement. That these services extended over a long period does not increase his share nor lessen Edmonds' interest in the profits. Under the contract, Moyers agreed to prosecute the claims and could neither abandon them without just cause nor advise clients to put them in the hands of others. If he did so, he is chargeable with the fees which should have been earned by him under the articles of partnership. Neither can Edmonds' interest be diminished on the ground that the contract of employment by the client was revoked by his insanity or death. They made no such objection and apparently acquiesced in Edmonds' arrangement by which they were put in the hands of Moyers. The survivor cannot retain the business thus coming to him by virtue of a contract with Edmonds without accounting for his share of the fees.

Moyers was charged with interest on the balance due from September 16, 1899, when the suit was filed, being the date on which the master found he should have accounted with the complainant. Moyers contends that what, if anything, was due was uncertain; that it required numerous references in order to properly state the account; that it was not liquidated until the final decree in November, 1908, when, for the first time, the true balance was ascertained, and hence that interest should only run from that date. Interest is allowed by way of damages for failure to pay money when it is due and frequently is not allowed except from the time the amount to be paid has been definitely ascertained. But there are many cases in which interest is charged from a prior date. Here the de-

fendant at first promised to make a statement, then contended, without substantial support, that the partnership was dissolved because Edmonds had transferred his interest in the fees. He resisted the accounting, failed to produce books, vouchers and statements proper to be kept by a surviving partner. As the Court of Appeals said, the delay and difficulty in reaching a conclusion was largely due to his failure to keep proper books. Under the circumstances the master properly allowed interest from the date the bill was filed. *Spalding* v. *Moser*, 161 U. S. 375; *Nashua & Lowell R. Corp.* v. *Boston &c. R. R.*, 61 Fed. Rep. 237, 247. Moyers did not except to this method of calculating interest; on the contrary, he obtained a ruling that on the same basis he should be allowed interest from 1892 on advances then made by him to Edmonds. He cannot now complain that the account was stated in accordance with a rule in which he acquiesced, and the benefit of which he invoked.

In the last assignment, it is alleged that the court erred in not dismissing the bill because of complainant's laches in filing it. It is contended that after Cummings was appointed committee of Edmonds in 1891, he knew of the contract of special partnership and that Moyers was prosecuting these claims, and not only made no demand for a settlement, but permitted Moyers to do all the work, incur all of the expense, and run all of the risks, without notifying him that Edmonds' representative would claim one-half of the profits. It is urged that such conduct was inequitable and that to wait until eight years before filing proceedings constituted laches which requires a dismissal of the bill. We find nothing in the facts or in the relation of the parties that made it incumbent on Cummings to warn Moyers of Edmonds' claim, even if Cummings had the full knowledge of all the facts which is necessary to raise any such obligation. Edmonds' right was rooted in the contract, and has only been enforced in pursuance

of its terms. Cummings had no title to Edmonds' property, but was a mere curator, with limited powers. He could not have sold Edmonds' interest in these claims to Moyers or anyone else without an order of court. For a much stronger reason he could not accomplish the same result and destroy Edmonds' right therein by a mere non-action. The fees were not collected until the spring of 1899, and within four months thereafter the bill for an accounting was filed.

The decree is

*Affirmed.*