## FRANK J. CAUGHY *v.* ETHEL D. HEARN, ADMINISTRATRIX, ET AL.

### [No. 12, January Term, 1930.]

*Decided March 12th, 1930.*

598.

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Diggbs, Parke, and Sloan, JJ.

*Vernon Cook,* for the appellant.

*Clarence A. Tucker* and *Biscoe L. Gray,* with whom were *Knapp, Tucker & Thomas* on the brief, for the appellees.

Sloan, J., delivered the opinion of the Court.

Frank J. Caughy and Benjamin F. Hearn were, and for many years had been, partners, engaged in the real estate business in Baltimore under the style of Caughy, Hearn & Company. The partnership was terminated January 4th, 1921, by the death of Mr. Hearn. 47 *C. J.* 1111.

A settlement of the partnership affairs was made on July 22nd, 1922, by an agreement between Mr. Caughy and Mrs. Ethel D. Hearn, administratrix of Benjamin F. Hearn, which is set out in full in the record. By that agreement it appears that the share of the Hearn estate in the business, exclusive of the "St. Helena" ground rents, was $119,535.07, all of which was provided for by the payment of $31,853.07 in cash, $6,800 to be paid within sixty days of the ratification of the agreement by the orphans' court, $1,000 in stock of the Maryland Title Guaranty Company, $49,900 in mortgages, and the balance, $30,000, by a note of Frank J. Caughy, to Mrs. Hearn, administratrix, dated June 2nd, 1922, payable six years after date, interest to run from January 1st, 1923, for the first year at three per cent., four per cent. the second year, five per cent. the third year, and thereafter at six per cent. One hundred and forty-two shares of the Ten Hills Corporation was delivered to Mrs. Hearn as collateral security for the note, and the note and collateral were deposited with the Mercantile Trust & Deposit Company for collection.

This was in full settlement of the partnership business, except what were known by the parties as the "St. Helena" ground rents, for which provision was made by the fifth paragraph of the agreement as follows: "It is also understood and agreed that in estimating the interest of the Hearn estate in the firm of Caughy, Hearn & Company as hereinbefore set forth, there is not included the St. Helena ground rent transaction between said firm and the Title Guarantee Company for the reason that it cannot at this time be ascertained whether a profit or loss will result therefrom. It is understood that the said Frank J. Caughy shall have full power and authority to work out that transaction with the title company aforesaid in such manner as he may deem best, all profit or loss resulting therefrom to be equally divided between the Hearn estate and Frank J. Caughy."

Sometime in 1919 (the exact date does not appear in the record), Caughy, Hearn & Company bought 286 ground rents at St. Helena, near Sparrows Point, for $209,000, the titles to which were taken by the Title Guarantee and Trust Company (of Baltimore), which paid the purchase money, secured also by the notes of Caughy, Hearn & Company, endorsed by Frank J. Caughy and Benjamin F. Hearn. The rentals ran from forty-two to fifty-four dollars a year, payable in semi-annual installments.

From the time of their purchase until Mr. Hearn's death, only ten rents had been sold. In 1921 five were sold; in 1922, fifty-eight; in 1923, eighteen; in 1924, six; in 1925, twenty; in 1926, fourteen, and in 1927, one hundred and seventy-three; the last two sales in January and February, 1927, being one hundred and sixty-eight rents sold to the Eureka-Maryland Assurance Corporation for $115,613.57. The purchase money, less commission to various brokers, was paid to the Title Company. The rents, amounting to $71,074.35, were collected by Frank J. Caughy until 1924, then by Caughy & Company, Incorporated, and paid over to the Title Company. The sales and collections were in charge of Frank J. Caughy until February, 1924, when he became

so ill that he was unable to go to his office for almost five years. The business was then incorporated under the name of Caughy & Company, Incorporated, and it succeeded to the business of Frank J. Caughy, and thereafter took charge of the St. Helena transaction under the personal and successful direction of Herman A. John, who had been with Caughy, Hearn & Company from 1918.

The last of the St. Helena rents were sold on February 17th, 1927. On January 18th, 1929, Mr. Vernon Cook, attorney for Mr. Caughy, wrote Mr. James Thomas, attorney for the Hearn estate, that there had been a net loss in the St. Helena transaction of $6,081.19, for one-half of which he made demand on the Hearn estate. The deficit was due to a charge by Mr. Caughy for commission of two and one-half per cent. on all sales and five per cent. on collections of rents.

On September 28th, 1927, a supplemental agreement was made whereby, in consideration of $5,000, to be paid by October 5th, 1927, and the further sum of $15,000 at the maturity of the note, June 2nd, 1928, the time for the payment of the balance, $10,000, would be extended for one year or until June 2nd, 1929. The payments were made as agreed and the time extended.

On July 2nd, 1929, the Mercantile Trust & Deposit Company wrote Mr. Caughy that, unless the balance of this note was paid forthwith, his collateral would be sold. The same day Frank J. Caughy filed his bill against Ethel D. Hearn, administratrix, and the Mercantile Trust & Deposit Company, setting forth the facts herein recited, tendering a check for $6,812.56, which he claimed was the net balance due the Hearn estate, and prayed (1) an order authorizing the payment of this amount into court; (2) a decree determining the sum tendered to be the full amount due the Hearn estate, requiring the defendants to receipt for the same and to surrender the note and collateral, and, (3) to enjoin them from selling the collateral. Leave was granted to pay the sum tendered into court and a preliminary injunction was also granted. Testimony was taken in open court and at its

conclusion a decree was passed dismissing the bill, from which the plaintiff, Frank J. Caughy, has appealed.

Mrs. Hearn testified that she heard nothing of the intention of the plaintiff to charge for his services in the closing out of the St. Helena transaction until the first of February, 1929, which was after Mr. Cook had written Mr. Thomas. Her son, B. F. Hearn, Jr., testified that he did not hear anything of it until he was told by Mr. Caughy sometime in 1929. Mrs. Hearn testified that the only time anything had been said to her about commissions was in February, 1927, when, at Mr. John's request she called on him at Mr. Caughy's office and he then told her of the sale to the Eureka Assurance Corporation and asked her consent (which was granted) to the payment of commissions of $889, one per cent., to two agents through whom the sale was made, testifying further that Mr. John told her then that with the sale to the Assurance Company they would break about even. (Excluding the plaintiff's claim, the net profit was $42.32). We fail to see the point to this testimony, as about $3,700 had theretofore been paid to other brokers, varying from two and a half to six and four-tenths per cent., about none of which was Mrs. Hearn consulted.

The record shows that nothing was said about commissions or compensation at the time of the settlement in July, 1922. There is no mention of it anywhere in the agreement except in the provision quoted, and nothing was said by either party except as herein stated. The plaintiff's contention is that, because of the unusual effort required to effect a settlement of the St. Helena business and the time and labor involved, his claim for compensation takes it out of the general rule that a surviving partner is not entitled to any reward for services rendered in settling the affairs of a partnership. The strict rule, and the one which has been generally applied by the courts, is that a surviving partner is not entitled to compensation unless it is provided for by the agreement of partnership. *Sangston v. Hack*, 52 Md. 173, 198; *Consaul v. Cummings*, 222 U. S. 262, 56 L. Ed. 192; *Rowley on Partnership*, secs. 353, 354, 637. As stated by Justice

Holmes in *Thayer v. Badger,* 171 Mass. 279, "there is a disinclination to allow pay to a surviving partner for winding up; *Dunlop v. Watson,* 124 Mass. 305; but the tendency is to deal with such questions on their particular circumstances, rather than by absolute rules." See *Condon v. Callahan,* 115 Tenn. 285, 1 L. R. A. (N. S.) 643.

The Hearn and Caughy affairs were settled by the agreement of July 22nd, 1922. The St. Helena ground rents were included in the settlement by leaving the matter of their sale to Mr. Caughy. He was given unlimited authority to work it out according to his own best judgment, and he did it without any interference from his partner's administratrix. He incurred expenses and paid commissions to brokers, all of which were allowed without objection. He was as much concerned in the outcome as anyone. He says himself that, if they had been sold at the time of settlement, there would have been a loss of $15,000. This estimate was not based on any offer, but, if the market was as depressed as testified to, it probably was an underestimate. Inasmuch as the delay in the final settlement was as much for the benefit of Mr. Caughy as for the Hearn estate, and with Mr. Caughy having "full power and authority to work out that transaction * * * in such manner as he may deem best, all profit and loss resulting therefrom to be equally divided between the Hearn estate and Frank J. Caughy", in the absence of any understanding that he should be compensated personally for the performance of the duty which his agreement of partnership imposed on him as surviving partner, we are of the opinion that the appellant is not entitled to an allowance for anything except such expenses and commissions as he was obliged to pay for services rendered by others in the collection of rents and the sales of the fees securing the rents. 47 *C. J.* 1178.

The appellant, however, contends that, by reason of the provisions of section 18 of the Uniform Partnership Act, Code, art. 73A, Act of 1916, ch. 175, the plaintiff is entitled to compensation. If the partnership had been formed after

the passage of this act, in the absence of an agreement to the contrary the surviving partner would be entitled to compensation for closing out the partnership business. The appellees contend that the act has no application because passed after the partnership was formed. It has no application because the burden of the statute cannot be imposed on the prior agreement. Whether compensation is to be allowed in this case or not is a matter of judicial construction, with which no question of the impairment of an obligation is involved, (*Cooley's Constitutional Limitations* (8th Ed.), 46, note 1), in which this court is free to follow the general trend of authority, and disallow compensation, or treat this case as one of the exceptions wherein compensation should be allowed. For the reason that the sale of the ground rents was made under a special agreement hereinbefore quoted, from which it does not appear that personal compensation to the plaintiff was contemplated or can reasonably be inferred, and that by reason of the delay Mrs. Hearn gave him the opportunity to save himself, as well as her husband's estate, from a serious loss, his claim for compensation will be disallowed.

*Decree affirmed, with costs.*