TMG II, et al., Appellants,

v.

UNITED STATES of America, Appellee.

No. 91–5361.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 4, 1993.

Decided Aug. 13, 1993.

Alan I. Mendelsohn, Washington, DC, argued the cause for appellants. With him on the briefs was Marvin L. Szymkowicz, Washington, DC.

Joan I. Oppenheimer, Atty., Dept. of Justice, Washington, DC, argued the cause for appellee. With her on the briefs were Jay B. Stephens, U.S. Atty. at the time the brief was filed, and Gary R. Allen, Atty., Dept. of Justice, Washington, DC.

Before: MIKVA, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

This appeal concerns a dispute between the IRS and two partnerships over assets that the IRS seized from Mr. Edward Markowitz, the partnerships' errant former general partner. The partnerships claim that the seized assets are rightfully partnership property, rather than personal property of Markowitz, and are therefore not subject to seizure for purposes of satisfying Markowitz's personal federal tax liabilities. They argue in the alternative that their claims take priority over those of the government under a theory of constructive trust.

·The district court properly held that the partnerships did not hold equitable title to the contested assets at the time of the IRS seizure. The district court also correctly concluded that there was no basis for waiving the requirement that the partnerships "trace" contested assets back to assets that were misappropriated from the partnership in order to establish a constructive trust. Finally, the district court was also correct to find that the partnerships failed to establish that there was a triable issue of fact as to whether assets seized from Markowitz could be traced back to the "TMG Associates Bonus Account."

However, the district court erred in concluding that the partnerships did not present a triable issue as to whether the funds that

Markowitz used to purchase a house could be traced to one of the partnerships' Cayman Islands bank accounts. The court abused its discretion by refusing to allow the partnerships to submit critical rebuttal evidence before ruling on the cross-motions for summary judgment. Thus, we remand to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

The parties have been before this Court twice before in matters closely related to the decision on appeal. *See Weil v. Markowitz,* 898 F.2d 198 (D.C.Cir.) (*"Weil I"*), *cert. denied,* 498 U.S. 821, 111 S.Ct. 68, 112 L.Ed.2d 42 (1990); *Weil v. Markowitz,* 829 F.2d 166 (D.C.Cir.1987) (*"Weil II"*). The background of this dispute is discussed more fully in these earlier decisions, and in the district court opinion under review, *TMG II v. United States,* 778 F.Supp. 37 (D.D.C.1991) (*"TMG"*). We provide here a shorter version of the relevant facts to provide the necessary context for our decision.

TMG II and TMG Associates (collectively "TMG" or "the partnerships") are New York limited partnerships purportedly formed as broker-dealers and market-makers in the commodities and metal markets, but actually in the business of providing fraudulent tax deductions through sham transactions. Mr. Edward Markowitz was the managing general partner of TMG II, and the sole shareholder of Monetary Group, Ltd. ("MGL"), which served as TMG Associates' general partner.

Markowitz and MGL resigned their general partner positions on November 15, 1983, without making a proper accounting and restoration of partnership property. Shortly thereafter, TMG sued Markowitz, MGL and two additional Markowitz corporations, and Ms. Debra Strahan (Markowitz's sister) for an equity accounting, monetary repayment, injunctive relief, and money damages based on allegations that Markowitz and Strahan had diverted partnership property and business to themselves. *See Weil v. Markowitz,* No. 83–3685 (D.D.C. December 12, 1983) (TMG II's complaint); *TMG Associates Custodial Committee v. Monetary Group, Ltd,* No. 83–3685 (D.D.C. May 31, 1984) (TMG

Associates' complaint). Based on an investigation and report by a court-appointed receiver, the district court granted an injunction freezing the defendants' assets. *Weil v. Markowitz,* No. 83–3685 (D.D.C. February 23, 1984).

Meanwhile, the IRS was conducting a parallel criminal investigation in which it received substantial assistance from the partnerships. The government eventually obtained stays of the TMG civil suits, successfully arguing that further proceedings would endanger its criminal investigation. *Weil v. Markowitz,* No. 83–3685 (D.D.C. June 6, 1984); *TMG Associates Custodial Committee v. Monetary Group, Ltd,* No. 83–3685 (D.D.C. August 1, 1984). This court upheld the stays in *Weil I,* 829 F.2d 166.

The stays delayed the civil suits long enough for the government to file federal tax liens against Mr. Markowitz, and collect assets in satisfaction of the liens, before TMG was able to obtain its judgments. The stays expired by their own terms on September 14, 1984. *See Weil II,* 829 F.2d at 169. On January 14, 1985, the IRS made assessments against Markowitz and filed a notice of federal tax liens. Some seven months later, on August 30, 1985, the district court entered a judgement in the TMG suits. The partnerships were awarded a total of approximately $900,000, which the court deemed to represent a full equity accounting for partnership property entrusted to Markowitz. *Weil v. Markowitz,* No. 83–3685 (D.D.C. August 30, 1985). The district court subsequently rejected TMG's contention that the judgment should be entered *nunc pro tunc* to October 26, 1984, the scheduled concluding date of the trial before the government obtained the stay of proceedings. *See Weil I,* 898 F.2d at 199–200. This court affirmed that decision. *Id.*

TMG commenced the present action to obtain a determination that its interest in fourteen properties owned at one time by Markowitz primed the interest that the United States had obtained via its tax lien. On competing motions for summary judgment, the district court ruled in favor of the United States and dismissed the action. *TMG II v.*

*United States,* 778 F.Supp. 37 (D.D.C.1991) ("*TMG*").

## II. Analysis

The district court's thorough and well-reasoned opinion properly resolved virtually every issue. The district court appropriately rejected the partnerships' claim that under District of Columbia law, an errant fiduciary is deemed to own no property until he makes an accounting and reimbursement to the partnership. Thus, the court was correct in holding that the partnerships did not hold equitable title to the contested assets at the time of the IRS seizure. The district court was also correct to decline TMG's invitation to waive the tracing requirement necessary to establish a constructive trust. Finally, the district court properly concluded that there was no triable issue of fact as to whether assets seized from Markowitz could be traced back to the "TMG Associates Bonus Account."

The district court did, however, err in one respect. The court abused its discretion by refusing to allow the partnerships to submit critical rebuttal evidence before ruling that the partnerships did not present a triable issue as to whether Markowitz purchased a house using funds that could be traced to one of the partnerships' Cayman Islands bank accounts. Thus, we remand to the district court for further proceedings consistent with this opinion.

## A. *The* "Moyers" *Issue*

██ The partnerships maintain that Mr. Markowitz had no valid property interest in any of his personal property to which the IRS levy could attach. Their position is based on the premise that under District of Columbia law, "an errant general partner, like Mr. Markowitz, is deemed to own no property of his own until all property due and owing the partnership has been accounted for and restored." *TMG,* 778 F.Supp. at 45 (internal quotations and citation omitted). The district court properly rejected TMG's argument.

The parties agree that a federal tax lien can only attach to "property ... belonging to [the taxpayer]." *Id.* at 44 (quoting 26 U.S.C. § 6321). "Thus, if the [p]artnerships can show that at the time the [g]overnment filed its liens they, and not Markowitz, were the true owners of the fourteen assets, they can establish their entitlement to those assets." *Id.* However, TMG's contention that Markowitz did not own the seized property at the time of the IRS seizure is insupportable.

TMG relies on *Moyers v. Cummings,* 17 App.D.C. 269 (1900), *aff'd sub nom. Consaul v. Cummings,* 222 U.S. 262, 32 S.Ct. 83, 56 L.Ed. 192 (1911), which involved a dispute between Moyers and the estate of his former law partner, Edmonds. The administrator of Edmonds's estate alleged that Moyers had collected about $26,000 in fees due to the partnership and deposited them in a personal account, commingling the partnership fees with his own funds. *Id.* at 270–71. The lower court appointed a receiver and eventually ordered Moyers to disgorge some $9,000 determined to be due to the estate of his former law partner. *Id.* at 274–75.

Moyers did not contest that he had deposited the fees in question into his personal account, nor that he owed money to the partnership (although he contested the amount). Rather, he challenged the trial court's authority to order that funds be paid out of his bank account. He argued that the funds in the account at the time of the court order were his own, and that his liability to the estate was as a general debtor rather than a trustee. Thus, Moyers contended, the estate could only satisfy its judgment by filing a lien against him, not by demanding a specific asset such as his personal bank account. *Id.* at 275–77.

The D.C. Court of Appeals rejected this argument. Because the partnership funds had been placed into Moyers's personal account, and it would be impracticable to determine that those precise funds (as opposed to the commingled personal funds) were still in the account, the *Moyers* court held that "in mingling the [partnership] fund with his own and drawing thereon on his individual account, [Moyers] will be presumed to have first drawn and used his own money." *Id.* at 279. In other words, any balance still in the account at the time of the order (up to

$9,000) would be presumed to be the $9,000 owed to the partnership and held in constructive trust by Moyers. The court held that Moyers had failed to present evidence to rebut the presumption that he had depleted his personal assets from the account before reaching partnership funds. *Id.* at 280–81.

The district court fittingly rejected TMG's broad interpretation of *Moyers.* As the district court concluded, *Moyers* stands only for the narrow proposition that once partnership funds are traced into a particular personal account, subsequent withdrawals from the commingled account are rebuttably presumed to be of the personal rather than the partnership funds. *See TMG,* 778 F.Supp. at 45–46. TMG correctly maintains before this Court, and the district court properly held, that "the identity of the partnership fund is not lost by the act of commingling." *Moyers,* 17 App.D.C. at 279. But the assertion that *all* of the errant partner's property is therefore held in trust for the partnership simply does not follow from this principle.

TMG attempts to assail the district court's conclusion by subtly misconstruing passages in the opinion. TMG first argues that the district court misunderstood references to "the fund" in *Moyers* to refer to the personal bank account rather than the partnership money deposited into that account. *See TMG,* 778 F.Supp. at 45–46; *Moyers,* 17 App.D.C. at 279. The district court made no such error. When the district court stated that *Moyers* refers "only to 'the fund,' not to all of Moyers' property," *TMG,* 778 F.Supp. at 46, the court was merely pointing out that *only the account to which the partnership fund had been traced* was at issue, rather than all of Moyers assets. As we have already stated, this is exactly correct.

TMG's remaining *Moyers* arguments are also fruitless. First, contrary to TMG's claim, *Moyers* did not remove the tracing burden from the partnership. Rather, because the parties agreed that partnership funds had been placed into a particular personal account, the court held only that the funds were presumed to remain in the account despite commingling and some dissipation. *Moyers,* 17 App.D.C. at 279. Again, the district court got it exactly right. Sec-

ond, the temporary restraining order in the lower court, freezing *all* of Moyers's assets, is not enough to establish that *Moyers* stands for a broad principle which the language of the opinion does not itself support. The lower court did freeze all of Moyers's assets pending satisfaction of the judgment. But this aspect of the remedy was arguably unwarranted in light of the lower court's holding, probably prophylactic in nature, and certainly never reviewed by the *Moyers* court. TMG cannot convincingly argue that the holding in *Moyers* should be broadened to justify or explain the lower court's remedy.

The parties also argue over whether New York or D.C. law should be used to determine the nature of Markowitz's property interest. However, as the district court properly held, the states' laws are not in conflict and the choice-of-law question is therefore irrelevant. *See TMG,* 778 F.Supp. at 46.

### B. *Waiver of the Tracing Requirement*

▮ A breach of fiduciary duty often gives rise to the creation of an equitable constructive trust, whereby an errant fiduciary is deemed to hold in trust property misappropriated from the partnership. In order to obtain a constructive trust, a plaintiff must generally connect specific property held by the fiduciary with the property misappropriated from the partnership. Thus, only property traced from the fiduciary breach to the fiduciary's current holdings will be deemed to be held in trust for the partnership. *See TMG,* 778 F.Supp. at 47 (discussing legal foundations of the constructive trust and relevant precedent).

The district court concluded that although a constructive trust may have been created as to the partnership property that Markowitz misappropriated, the constructive trust claim must fail in this case because the partnerships failed to trace any of the assets seized by the IRS to the stolen partnership property. *Id.* at 51–54. The district court acknowledged that "no recorded District of Columbia case turns upon the requirement of tracing," but held that "there is no reason to think that the D.C. courts would depart from these general and well-accepted principles." *Id.* at 48. We find the district court's discus-

sion of existing D.C. law—and of more clearly dispositive Maryland law, which is "the source of the District's common law and an especially persuasive authority when the District's common law is silent," *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983)—to be thoroughly convincing. *See TMG*, 778 F.Supp. at 48–49.

TMG makes three arguments in response to the district court's conclusion that tracing is generally required in the District of Columbia to establish a constructive trust. First, TMG argues that *Moyers* eliminated the tracing requirement. Second, TMG maintains that the policy considerations requiring tracing do not apply in this case. Finally, TMG contends that the preliminary injunction freezing Markowitz's assets obviates the need for traditional tracing analysis. The district court properly rejected each of these arguments.

### 1. *Moyers*

As discussed *supra* pp. 39–40, *Moyers* did impose a tracing requirement on the plaintiff. It is TMG, and not the district court, that misreads *Moyers*. The parties in *Moyers* agreed that the partnership funds were placed in a particular personal account, and the court placed on Moyers the burden to demonstrate that those funds withdrawn from the *commingled* account were partnership funds. In the absence of such proof, the court presumed that personal funds were withdrawn, and that the partnership funds remained in the commingled account.

### 2. Policy Considerations

TMG argues that the tracing requirement should not be imposed on several alternative policy grounds. Specifically, the partnerships maintain that tracing is unnecessary: (1) when a constructive trust beneficiary is competing with a tax lien; (2) against victims of fiduciary misconduct as opposed to general creditors; and (3) in light of the remarkable ease with which assets can be repeatedly commingled by an errant fiduciary. We address each point in turn.

TMG first argues that tracing should be dispensed with in the case of a competing tax lien because "the tax collector not only steps into the taxpayer's shoes but must go barefoot if the shoes wear out." *United States v. Rodgers*, 461 U.S. 677, 691 n. 16, 103 S.Ct. 2132, 2141 n. 16, 76 L.Ed.2d 236 (1983) (quoting 4 B. Bittker, Federal Taxation of Income, Estates, and Gifts ¶ 111.5.4 (1981)). The district court did not quarrel with this concept; in fact, it is a fundamental premise of the opinion. *See TMG*, 778 F.Supp. at 50 ("Bittker's metaphor describes the doctrine, mentioned above, that state law determines whether a taxpayer has a sufficient property interest for federal tax liens to attach.") If TMG could establish a property right to seized assets *through tracing*, their claim would undeniably defeat the IRS lien.

However, as the district court pointed out, the *Rodgers* principle applies only in determining whether there is a property interest to which the tax lien can attach. The principle does not address the priority of the tax lien vis-a-vis other interests. Likewise, it does not support the proposition that tracing should be dispensed with in tax lien cases. The partnership must stand alongside all other creditors if it cannot trace its assets, and have its priority determined by the same "first in time, first in right" rule that applies to all creditors. *See TMG*, 778 F.Supp. at 49–50.

The partnerships also argue that *United States v. Baldwin*, 575 F.2d 1097 (4th Cir. 1978), stands for the proposition that a victim of fiduciary misconduct such as TMG should be given priority over a general creditor such as the IRS. But *Baldwin* is completely inapposite. The *Baldwin* court held, via certification to the Maryland Court of Appeals, that assets of an express trust cannot be taken to satisfy the settlor's personal tax liabilities where the settlor has irrevocably transferred the seized property to the trust. The case involves neither a constructive trust, fiduciary misconduct, nor the tracing requirement.

Finally, TMG argues in connection with its other points that the tracing requirement is obsolete in light of the remarkable ease with which assets can be repeatedly commingled in the modern financial world. This argument is frivolous. The same automated fi-

nancial system which allows assets to be repeatedly commingled at blinding speed also enables transactions to be more easily traced through quicker access to the records of the transactions. The burgeoning information age does not present a basis for jettisoning the long-standing tracing requirement.

### 3. The Preliminary Injunction

■ TMG relies on *United States v. Fontana*, 528 F.Supp. 137 (S.D.N.Y.1981), and *SEC v. Paige*, 1985 WL 2335 (D.D.C.1985), *aff'd without opinion*, 810 F.2d 307 (D.C.Cir. 1987), for the proposition that the preliminary injunction freezing Markowitz's assets in February of 1984 obviated the need to engage in traditional tracing analysis. TMG argues that these cases support the claim that pre-judgment remedies such as attachment are sufficient to bring all attached property into the constructive trust without the need to trace. TMG argues that the district court erred by concluding that neither *Fontana* nor *Paige* disposed of the tracing requirement. *See TMG*, 778 F.Supp. at 50–51.

The district court correctly concluded that neither case supports TMG's position because neither case disposed of the tracing requirement. *See TMG*, 778 F.Supp. at 50–51. The *Fontana* court remanded, and did not decide, the question of whether a constructive trust had been formed in that case. *See Fontana*, 528 F.Supp. at 146. For the purpose of resolving the subsidiary issues before it, the court accepted *arguendo* the plaintiff's claim "that the fund in question is traceable to wrongful acts by Fontana in breach of his fiduciary obligations." *Fontana*, 528 F.Supp. at 139. The *Fontana* court in no way rejected the tracing requirement.

In *Paige*, the misappropriated funds were explicitly traced from the errant fiduciary's personal bank account to an escrow account later formed, pursuant to a permanent injunction, to satisfy claims against the fiduciary. *See Paige*, 1985 WL 2335 at *2 ("The escrow assets were purchased by Paige with funds from the same general personal checking accounts into which he had deposited the [embezzled funds]."). The court therefore did not allow a federal tax lien to defeat the

claimants' rights to the funds. The case is on all fours with the proper interpretation of *Moyers*, holding that *commingled* funds are deemed to be held in constructive trust notwithstanding the commingling and subsequent dissipation of the combined fund. In fact, *Paige* cited Florida law for the proposition that "when a trustee wrongfully commingles trust funds with his own, equity will impress the trust on the entire mass...." *Id.* *Paige* reenforces the district court's reading of *Moyers*, and imposes the same tracing requirement that the district court imposed on TMG in the instant case.

### C. Tracing of the Disputed Assets

TMG's final (and only viable) argument is that some of the disputed assets can indeed be traced to the property Markowitz misappropriated from the partnerships, or at least that the tracing issue is in dispute and therefore not amenable to summary judgment.

### 1. The "TMG Associates Bonus Account"

■ TMG claims that it can trace $424,-846.94 in assets seized or recovered from Markowitz to the "TMG Associates Bonus Account" opened at a local Washington bank for TMG Associates. The parties agree that the account was opened with an initial deposit of $130,000 in partnership money, and that Hillcrest commissions totalling $597,500 were later deposited. *TMG*, 778 F.Supp. at 51. (Hillcrest is a securities firm that initially "traded" with the partnerships, and later with Markowitz-owned entities. The transactions were all bogus, with Hillcrest paying "commissions" for fraudulent documentation used to substantiate the illegitimate tax losses. *Id.* at 40.)

The district court found that the initial $130,000 deposit was either spent on behalf of, or returned to, TMG Associates, and was therefore never misappropriated by Markowitz. *Id.* at 51. The court declined to definitively decide who owned the Hillcrest commissions, but it appears to have assumed that the commissions in question were "earned" by Markowitz-owned entities rather than the partnerships. *See id.* at 40, 51–52. Rather, finding that the commissions were undoubtedly the fruit of sham transactions, the court

held that equity would not enforce TMG's constructive trust claim to the property because they had unclean hands. *Id.* at 52.

TMG does not challenge the court's holding with respect to the Hillcrest commissions. The partnerships do contend, however, that there is a genuine issue of material fact as to what happened to the $130,000 initial deposit after it was put into the Bonus Account. The district court credited declarations by Markowitz and an IRS agent (supported by check stubs and receipt journals) that $53,-872.90 was used to pay bonuses to five TMG Associates employees, and that the remaining $76,127.10 was returned to TMG Associates in the form of two checks. *Id.* at 51. TMG argues that Markowitz's declaration was a recent fabrication precipitated by his desire to cooperate with the government, pointing out that Markowitz was unable to recall anything about the Bonus Account at his deposition two years earlier in the civil suit between the partnerships and Markowitz. TMG also uses the Markowitz deposition to convincingly rebut the government argument that Markowitz could not remember the details of the Bonus Account because he did not have certain records available at the deposition.

Notwithstanding the fact that Markowitz changed his tune between the TMG–Markowitz deposition and his declaration to the IRS in this proceeding, the district court did not, as TMG asserts, simply accept the Markowitz declaration at face value. Markowitz's claims were incontrovertibly supported by the check stubs and cash receipt journal. His claim in the earlier deposition that he could not remember anything about the Bonus Account, even in the face of cancelled checks and bank statements from the account, did not create a triable issue of fact. In the first place, the earlier statement that he could not remember is not inconsistent with his later declaration. Markowitz's deposition statement that he could not remember anything about the account does not cast any doubt on the reliability of the check stubs and cash receipt journal. Furthermore, TMG did not contest the authenticity or accuracy of the documentation, or assert that the bonuses were improper.

Thus, the government is correct that TMG failed to meet the burden of tracing funds from Markowitz back to the Bonus Account. The uncontradicted evidence demonstrates that the $130,000 was spent on behalf of, or returned to, TMG Associates. TMG's claim that the Markowitz declaration should not have been admitted at the summary judgment stage because it was inconsistent with his earlier deposition, *see Adelman–Tremblay v. Jewel Companies,* 859 F.2d 517 (7th Cir.1988), is both incorrect and beside the point. As we have already stated, the two statements are not inconsistent. And in any case, even in the absence of the Markowitz declaration, the government presented uncontested evidence that the $130,000 was returned to TMG. The government need not rely on any testimony from Markowitz to establish this fact.

2. The Cayman Islands Account and 2323 Porter Street

Finally, we reach the single issue that the district court did not satisfactorily resolve. The partnerships contend that they are the true owners of $552,846.23 in net proceeds realized from the sale of Markowitz's house at 2323 Porter Street. They claim that the funds used to purchase the house came from a TMG bank account in the Cayman Islands. We hold that the district court abused its discretion in refusing the submission of critical rebuttal evidence, and therefore reverse the district court's grant of summary judgment and remand for further proceedings.

TMG first claimed that 2323 Porter was purchased with partnership funds in their summary judgment reply brief, and the district court decided to allow supplemental discovery and briefing on the issue. In their supplemental brief, TMG asserted that Markowitz maintained a TMG account at the Cayman Islands branch of a Swiss Bank, that he transferred money from the Cayman Islands account to a personal account in the District of Columbia, and that he used the transferred funds to purchase his house. The government offered evidence in their responsive brief that there were in fact *two* Cayman Islands accounts with the *same* ac-

count number, and that the funds used to purchase the house came from the second account—which was opened with funds from another Markowitz-owned company that had no connection with TMG. *TMG*, 778 F.Supp. at 52–53.

The partnerships offered evidence in their supplemental reply brief that "the two TMG Associates accounts in the Cayman Islands were combined before the money used to purchase the 2323 Porter Street residence was transferred." *Id.* at 53. The district court did not suggest that this evidence was insufficient to create a disputed issue of fact. Rather, the court refused to accept the proffer on the following grounds:

> The Government has not, however, had a chance to respond to this new evidence, nor indeed does it appear that the plaintiffs provided the Government with notice of this evidence during the additional discovery period.... TMG's proffer of this evidence is so belated that it would be unfair to allow its submission.

*TMG*, 778 F.Supp. at 53.

The partnerships argue that the court erred by refusing to accept the new evidence. First, they point out the existence of two identically numbered accounts was first brought out in a declaration filed with the government's supplemental opposition brief. Thus, they argue, the evidence that the two accounts had been commingled was perfectly proper rebuttal. Second, TMG argues that the government could not have been unfairly surprised because it had in its possession, at least since 1985, the documents revealing that there were two accounts, and that they had been commingled. Third, TMG states that the submission was not untimely because Fed.R.Civ.P. 56(b) allows the filing of evidentiary affidavits until the day of the summary judgment hearing. We agree with each of these contentions.

The government's responses in defense of the district court ruling are not convincing. The government begins by arguing that the district court did not abuse its discretion in holding the proffer untimely because the government did not have time to obtain evidence before the close of discovery that would demonstrate that the second Cayman Islands account contained no TMG funds. However, TMG is correct that since the *government* first raised the existence of two accounts, it would be unfair *to TMG* to accept that evidence without allowing TMG to respond. The district court was obligated to accept TMG's proper rebuttal once it accepted the government's new evidence. The district court abused its discretion in refusing to do so.

The government argues in the alternative that the documents submitted in support of the supplemental reply brief could not be considered because they were not accompanied by an affidavit or sworn to as required by Fed.R.Civ.P. 56(e). The government contends that although the district court did not rely on this reasoning, this court can uphold the district court on any available grounds. We decline to affirm the district court's decision on these grounds. The record below does not suggest that there was a dispute over the authenticity of the relevant documents, and TMG asserts that many other documents submitted for consideration by both parties, and accepted by the district court, were not accompanied by proper foundational affidavits.

## CONCLUSION

We are not in a position to assess the merits of TMG's claim to the proceeds from the sale of the Porter Street residence. The record does not disclose whether the two Cayman Islands accounts were in fact combined, as TMG alleges, nor whether any commingled funds were subsequently segregated when Markowitz transferred money from the Cayman Islands to his personal account in Washington. Thus, we remand to the district court to allow full discovery on the issue, and to determine whether TMG can trace the proceeds from the sale of 2323 Porter Street back to partnership funds.

*So ordered.*