**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**DISHMAN INDEPENDENT OIL, INC.;
Penny Oil Corporation; Ronnie Messer;
Kings Construction Company; Corbin
Chemical Company, Defendants–Appellees.**

No. 93–6246.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1994.

Decided Jan. 31, 1995.

David Middleton, Asst. U.S. Atty., Office of the U.S. Atty., Lexington, KY, Stuart M. Fischbein, Trial Atty., U.S. Dept. of Justice, Tax Div.; William S. Estabrook, Robert L. Baker (argued), and Gary R. Allen, Acting Chief (briefed), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for plaintiff-appellant.

L. Lee Tobbe (argued and briefed), Monticello, KY and Julius Rather, Lexington, KY, for defendants-appellees.

Before: RYAN and BATCHELDER, Circuit Judges; and EDGAR, District Judge *

---

* The Honorable R. Allan Edgar, United States District Court for the Eastern District of Tennes-

BATCHELDER, Circuit Judge.

Plaintiff–Appellant, United States of America, appeals the ruling by the bankruptcy court, as affirmed by the United States District Court for the Eastern District of Kentucky, granting Defendant–Appellee, Dishman Independent Oil, Inc., its motion for summary judgment. The bankruptcy court order held that appellee Dishman's prejudgment attachment lien was entitled to priority over the federal tax lien filed by the Internal Revenue Service (IRS). For the reasons stated below, we reverse the decision of the bankruptcy court, as affirmed by the district court.

## I.

The facts in this case are not in dispute. Defendant–Appellee Dishman Independent Oil, Inc. (Dishman) initiated suit in Kentucky state court by suing Penny Oil Corporation, Ron Messer, Edna Messer, Corbin Chemical Company, and Kings Construction Company (hereafter the "debtors") in the sum of $365,-522.25 for amounts allegedly due on the sale of petroleum products from Dishman to the debtors. In pursuit of its suit against the debtors, Dishman secured a prejudgment attachment against the property of Penny Oil Corporation and Ron and Edna Messer on January 11, 1991. On January 14, 1991, the prejudgment attachments were served and personal property of the debtors was seized by Dishman. Since January 14, 1991, Dishman has been in possession of the debtors' property which consists of diesel fuel, gasoline, cash, checks, semi-tractors and trailers, bulk petroleum storage tanks, and fuel blending pumps.

As a result of its own indebtedness to its creditors, Dishman subsequently filed a petition for relief under Chapter 11 of the Bankruptcy Code. Dishman's suit against the debtors was therefore moved to the bankruptcy court as an adversary hearing. A trial was held on February 27, 1992, which resulted in an April 27, 1992 judgment in favor of Dishman for $365,522.25 with service charges.

see, sitting by designation.

During the time period between Dishman's attachment and seizure of the debtors' property (January 14, 1991) and the judgment in favor of Dishman (April 27, 1992), a series of events took place which gave rise to the issue in this appeal. The first significant event during that period was the postponement of the trial in Dishman's case against the debtors, which was originally scheduled to go to trial on November 22, 1991.[1] However, immediately prior to that date, the defendants Ron and Edna Messer assigned all of their right, title, and interest in the attached property to the IRS. As a result, the IRS was granted a continuance, over the objection of Dishman, specifically to prepare for trial in its new role as defendant and owner of the attached property.

The second significant event occurred on January 1, 1992, nearly one year after Dishman's attachment of the debtors' property, at which time the IRS assessed the debtors for unpaid excise taxes, interest, and penalties. The IRS consequently filed a tax lien against the debtors on January 29, 1992, approximately three months before Dishman was granted judgment by the bankruptcy court on April 27, 1992. The IRS tax lien seeks to collect $2,851,910.09 which is owed to the United States by the debtors for unpaid taxes from the third quarter of 1987 through the third quarter of 1988.

On May 29, 1992, the IRS was permitted to intervene in the proceeding to seek a determination by the court that its federal tax lien was valid and prior to any interest held by Dishman in the debtors' property. The IRS eventually filed a motion for summary judgment which the bankruptcy court denied.

Dishman then filed its own motion for summary judgment against the IRS. The bankruptcy court granted Dishman's motion for summary judgment, after finding that Dishman's attachment lien was perfected by the judgment entered in its favor on April 27, 1992, and was therefore prior to the federal tax lien against the debtors. *In re Dishman Indep. Oil Corp.*, Nos. 91–00057, Adv. No. 91–0078, 1993 WL 110032 (Bankr.E.D.Ky. Jan. 8, 1993). The district court affirmed the bankruptcy court's order granting Dishman's motion for summary judgment.

This timely appeal followed.

## II.

■ Under the Internal Revenue Code ("Code"), the IRS obtains a lien on the property of a taxpayer[2] when that taxpayer fails or refuses to pay his taxes after assessment, notice, and demand. I.R.C. §§ 6321 & 6322. The lien attaches to all property and rights to a taxpayer's property, including property subsequently acquired by the taxpayer. *See Glass City Bank v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *United States v. Safeco Ins. Co.*, 870 F.2d 338, 340 (6th Cir.1989). The broad language of the Code "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). In turn, § 6323(a) of the Code gives priority to these federal tax liens over most other creditors of the taxpayer-debtor. The priority allotted to IRS tax liens by § 6323(a) only allows such federal tax liens to be defeated by a narrow category of creditors:

> (a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a security interest*, mechanic's lienor, or *judgment lien creditor* until notice thereof which meets the

---

1. Plaintiff Dishman was prepared for trial on November 22, 1991, and had five witnesses present to testify that day.

2. As § 6321 states:
   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
   I.R.C. § 6321.

requirements of subsection (f) has been filed by the Secretary.

I.R.C. § 6323(a) (emphasis added).

The IRS asserts that its tax lien against the debtors has priority over Dishman's attachment lien on debtors' property because Dishman does not fall within the category of creditors protected by § 6323(a). According to the IRS, its tax lien was filed before Dishman obtained a final judgment, therefore, Dishman was not a judgment lien creditor until *after* the tax lien was filed. The IRS further argues that Dishman did not hold a perfected security interest in the attached property because a prejudgment attachment lien is merely an unperfected, inchoate interest in the property.

## A.

The issue before this court is whether a state attachment lien has priority over a federal tax lien if the property subject to the liens was attached *prior* to the time the federal tax lien was filed, although final judgment on the attachment lien was not handed down until *after* the federal tax lien was filed. It is undisputed that when a federal lien is involved, the relative priority between competing liens is a question of federal law determined by the principle "the first in time is the first in right." *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *State Bank of Fraser v. United States,* 861 F.2d 954, 963 (6th Cir.1988). Nonetheless, the task of determining what constitutes a perfected lien is usually governed by state law. *United States v. Bess,* 357 U.S. 51, 55–56, 78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1958); *see also United States v. Brosnan,* 363 U.S. 237, 240, 80 S.Ct. 1108, 1110–11, 4 L.Ed.2d 1192 (1960); *United States v. Waddill, Holland & Flinn, Inc.,* 323 U.S. 353, 356, 65 S.Ct. 304, 306, 89 L.Ed. 294 (1945). This usual rule is altered, however, when one

of the competing liens is a federal tax lien. *National Bank of Commerce,* 472 U.S. at 727, 105 S.Ct. at 2927–28; *see also In re Construction Alternatives, Inc.,* 2 F.3d 670, 674 (6th Cir.1993); *In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168, 1176 (6th Cir. 1990), *cert. denied sub nom., Ohio, Dep't of Taxation v. IRS,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991). According to the Supreme Court, "it is a matter of federal law when such a [state] lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later-filed federal tax lien." *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963) (footnote omitted). "Consequently, state-law limitations upon the ability of general creditors to reach a taxpayer's property do not affect the attachment of federal tax liens because the state-law consequences flowing from a property interest properly defined under state law 'are of no concern to the operation of the federal tax law.'" *Safeco Ins. Co.,* 870 F.2d at 340–41 (quoting *National Bank of Commerce,* 472 U.S. at 723, 105 S.Ct. at 2926).

Accordingly, the Supreme Court has determined a state lien to be "perfected" only when " 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *United States v. McDermott,* —— U.S. ——, ——, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993) (quoting *City of New Britain,* 347 U.S. at 84, 74 S.Ct. at 369); *see also* Treas. Reg. § 301.6323(h)–1(g) (1976). The IRS contends, therefore, that Dishman's lien was not perfected until April 27, 1992, when the bankruptcy court judgment determined the amount of the lien and the property subject to the lien—nearly three months after the federal tax lien was filed. Consequently, the IRS argues that regardless of whether Dishman's attachment lien is considered to be perfected under Kentucky law,[3] Dishman's lien was inchoate for

---

3. The Kentucky Revised Statute reads:

> A lien shall be created on the property of the defendant by the levy of the attachment; or by service of the summons, with the object of the action indorsed thereon, on the person holding or controlling his property.

Ky.Rev.Stat. Ann. § 426.383 (Baldwin 1991). The Kentucky courts have further determined that

> a lien on a specific piece of property acquired by attachment does not become effective merely by issuance of the writ of attachment or by placing the writ in the hands of an officer, ... nor does a lien become effective merely upon

purposes of federal law and the federal tax lien therefore retains its priority.

We believe this issue is controlled by the holding of *United States v. Acri*, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955), which supports the IRS's position. In *Acri*, the Supreme Court unequivocally held that a federal tax lien filed after an attachment lien was executed had priority over the attachment lien because judgment on the attachment lien did not occur until after the filing of the tax lien. *Id.* at 214, 75 S.Ct. at 241–42. In *Acri*, the Court was not persuaded by the recognition of the attachment lien as perfected under Ohio law. *Id.* at 213, 75 S.Ct. at 241. Rather, for "federal tax purposes" the lien was "inchoate ... because, at the time the attachment issued, the fact and the amount of the lien were contingent upon the outcome of the suit for damages." *Id.* at 214, 75 S.Ct. at 241.

In this case, Dishman had not yet been granted judgment at the time the federal tax lien was filed. According to federal law, therefore, at the time the federal tax lien was filed, both the property subject to Dishman's attachment lien and its amount remained uncertain. Thus, despite the fact that Dishman was in actual possession of the debtors' property before the tax lien was filed, the tax lien has a higher priority based on the holding in *Acri.*

Based in part on *In re Coston*, 65 B.R. 224 (Bankr.D.N.M.1986), the bankruptcy court found that Dishman's attachment lien had priority over the federal tax lien. It appears, however, that the bankruptcy court's reliance on *In re Coston* was misplaced. In that case, the bankruptcy court held that a judgment obtained by a creditor after a bankruptcy filing avoided the preference period of § 547 because it related back to the date of prejudgment attachment. However, neither of

the competing liens in *In re Coston* was a federal tax lien, and that decision is, therefore, inapposite to the case at hand.

■ In light of *United States v. Acri*, the concept of relation back, "which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment ...," *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950), would not change the outcome of this case. Pursuant to the holding in *Acri*, a state lien that is dependent upon the outcome of a suit for damages, is inchoate until final judgment. Consequently, the doctrine of relation back cannot save such an inchoate lien from being preempted by a federal tax lien which attaches before judgment is final.

### B.

■ Dishman makes an additional argument, on equitable grounds, that allowing a federal tax lien to obtain priority over the claim of a Chapter 11 debtor defeats the goal of Congress to help "struggling businesses to reorganize." In support of this contention, Dishman cites *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), establishing that Congress intended to protect the property of a bankrupt debtor from being levied upon by the IRS.

In its order, the bankruptcy court declined to address this or Dishman's additional equitable arguments because the court had concluded that Dishman's attachment lien had priority. On remand the court should, therefore, address Dishman's equitable arguments including the assertion that delaying the prosecution of Dishman's case allowed the

---

delivery of a copy of the attachment to the debtor.... There must be an actual levy on the property itself.
*Thacker v. Commonwealth*, 284 S.W.2d 325, 326 (Ky.Ct.App.1955) (citations omitted). Upon examining the record in the case at hand, the bankruptcy court found that Dishman had executed an actual levy on the debtors' property and that Dishman had reported the proceeds of the attachment to the Wayne Circuit Court. *In re Dishman Indep. Oil Corp.*, 1993 WL 110032, at

*2. The IRS did not dispute that the property actually had been levied upon. Consequently, the bankruptcy court found, pursuant to state law, that Dishman secured a perfected lien on the property as of the date of attachment and that Dishman was therefore a judgment lien creditor as defined by 11 U.S.C. § 101(36) (defining a judicial lien as one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding").

IRS to intervene and thereby insured that the filing of the federal tax lien predated judgment in favor of Dishman. *Cf. In re Mansfield Tire & Rubber Co.*, 942 F.2d 1055, 1062 (6th Cir.1991) ("We continue to recognize that equitable subordination in bankruptcy may be appropriate if the claimholder is guilty of inequitable conduct or if the claim itself is of a status susceptible to subordination."), *cert. denied sub nom., Krugliak v. United States*, 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992).

We note in that regard that the IRS apparently became the *owner* of the property in question *before* the IRS filed its tax lien against the property. On November 1, 1991, the Secretary of State of Kentucky dissolved Penny Oil Corporation, rendering Ron Messer the owner and title holder of the defunct corporation's assets. On November 22, 1991, all of the Messer rights, title, and interest in the attached property were then transferred to the IRS. In this manner, the IRS became the new owner of the property, established standing, and won the continuance on November 22, 1991, the date on which trial was originally scheduled to begin. Finally, on January 29, 1992, the IRS filed its tax lien. On remand, the court must, therefore, also consider whether the actions of the IRS, purporting to file a tax lien on its *own* property in January, 1992, constituted additional inequitable conduct.

### III.

For the foregoing reasons, we REVERSE the order of the district court granting appellee Dishman's motion for summary judgment. This case is REMANDED for proceedings not inconsistent with this opinion.