condominium owners and I do not think it should be the law of this circuit.

Therefore, I would affirm the district court in full.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0242P (6th Cir.)
File Name:  00a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOBST W.F. BLACHY, et al.,
        *Plaintiffs-Appellees,*

        *v.*

ROBERT E. BUTCHER and
ROSEMARY BUTCHER,
co-personal representatives of
the estate of Alexander
Michael Butcher, deceased;
ROSEMARY BUTCHER,
individually; LITTLE
TRAVERSE DEVELOPMENT
COMPANY, a Michigan
corporation; H.C.
DEVELOPMENT COMPANY, a
Michigan corporation,
        *Defendants-Appellants
        (99-1185/1492),*

UNITED STATES OF AMERICA,
on behalf of the Internal
Revenue Service,
        *Defendant-Appellant
        (99-1523).*

Nos. 99-1185/
1492/1523

1

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 91-00979—Gordon J. Quist, District Judge.

Argued:  March 9, 2000

Decided and Filed:  July 21, 2000

Before:  WELLFORD, SILER, and GILMAN, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:**  Robert E. Butcher, Trenton, Michigan, Joan I.
Oppenheimer, UNITED STATES DEPARTMENT OF
JUSTICE, APPELLATE SECTION TAX DIVISION,
Washington, D.C., for Appellants.  Jeffrey G. Raphelson,
BODMAN, LONGLEY & DAHLING LLP, Detroit,
Michigan, for Appellees.  **ON BRIEF:**  Robert E. Butcher,
Trenton, Michigan, Alice L. Ronk, William S. Estabrook,
UNITED STATES DEPARTMENT OF JUSTICE,
APPELLATE SECTION TAX DIVISION, Washington, D.C.,
for Appellants.    Jeffrey G. Raphelson, BODMAN,
LONGLEY & DAHLING LLP, Detroit, Michigan, for
Appellees.

GILMAN, J., delivered the opinion of the court, in which
WELLFORD, J., joined.  SILER, J. (pp. 26-28), delivered a
separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.    Even a
*diabolical* bar examiner would be reluctant to impose this
case's complex mixture of subject matter jurisdiction, fraud,

Instead, I would follow the decision of the district court in
finding that there is no Sixth Circuit authority on the priority
of a federal tax lien over a constructive trust beneficiary who
has been declared a beneficiary relating back to a time prior
to the filing of the tax lien.  One of the cases cited by the
district court, *Reliance Ins. Co. v. Brown*, 40 B.R. 214 (W.D.
Mo. 1984), appears to be in conflict with the decision of *In re
Omegas Group,* so it is of no benefit.  Another case  relied
upon by the district court, however, held that the IRS cannot
have any better rights than a taxpayer did.    *See Hobson v.
United States*, 168 F.Supp. 117, 119 (W.D. Mich. 1958).  A
similar conclusion was reached in *FTC v. Crittenden*, 823
F.Supp. 699, 704 (C.D. Cal. 1993), *aff'd*, 19 F.3d 26 (9th Cir.
1994); *see also TMG II v. United States*, 778 F.Supp. 37, 46
(D.D.C. 1991), *aff'd in part and rev'd in part*, 1 F.3d 36 (D.C.
Cir. 1993) (IRS conceded that "tax liens do not attach to
property subject to constructive trust.")

Although the majority feels that the IRS is a party without
"fault," I would not find that it is more faultless than the
condominium owners, who relied upon legal opinions that
they had proper title.  It was the fault of their title company,
not the condominium owners themselves.  One might even
argue that the IRS could have gone upon the property and
seen all of the construction of the condominiums, which
would put some persons on notice that the Butchers no longer
owned the property.    Thus, I would find that neither party
seems to be more at fault than the other, but that the IRS had
no better rights than did the Butcher family.  Their property
was held through a series of fraudulent moves.  If one were to
accept the majority ruling here, I wonder what the result
would be if the Butchers had  instead purchased the real estate
from the condominium owners with counterfeit money or
cold checks and the IRS had  filed tax liens against the
Butchers before the condominium owners had discovered the
fraud.  Under the majority's decision, if a court later declared
a constructive trust over the realty, the federal tax lien would
prevail.  That would be both unfair and inequitable to the

---

**CONCURRING IN PART, DISSENTING IN PART**

---

SILER, Circuit Judge, concurring in part and dissenting in part. I would affirm the decision of the district court in full. Therefore, I concur in most of the conclusions made by the majority opinion, but I dissent from that part of the decision which holds that the district court erred in finding that the constructive trust was retroactive to 1978 and, therefore, was superior to the 1988 tax lien filed by the IRS.

Although, as the majority finds, there is language in cases from this court which would support a determination that the federal tax lien is superior to the interest of constructive trust beneficiaries, those cases arose under entirely different circumstances. For instance, while *In re Omegas Group, Inc.,* 16 F.3d 1443, 1451 (6th Cir. 1984), declared that a constructive trust does not exist until a judicial decision determines that it exists, it arose out of a bankruptcy proceeding. It was enforcing a bankruptcy policy under 11 U.S.C. § 541(d), as the court cited with approval the decision in *The Oxford Organisation, Ltd. v. Peterson*, 144 B.R. 385, 388 (1992). It related the general policy that the statute does not allow a claimant of the debtor "to take ahead of all creditors, and indeed, ahead of the trustee." *In re Omegas Group, Inc.,* 16 F.3d at 1451.

Similarly, in the case of *United States v. Dishman Indep. Oil, Inc.*, 46 F.3d 523, 526 (6th Cir. 1995), this court held that the federal tax lien in that case was superior to a prejudgment lien filed by the creditor of the taxpayer. It did not involve a constructive trust at all. It set out the priority of a federal tax lien under the Tax Code, which is not directly in point here, because the prejudgment lien was not the same as a judgment lien.

real estate, marital property, bankruptcy, tax liens, contributory negligence, equitable remedies, and civil procedure upon hapless law school graduates. Because reality often marches in where creators of hypotheticals fear to tread, however, we are the "hapless" appellate court judges obliged to struggle with this twisted tale of true-life conflict.

The essence of this complicated case is that twelve condominium owners and their title insurance company, Lawyers Title Insurance Corporation, have filed suit against Rosemary C. Butcher, the representatives of the estate of her late husband Alexander M. Butcher, Little Traverse Development Company (LTDC), H.C. Development Company (HCDC), and the Internal Revenue Service (IRS), claiming that the condominium owners should be declared the legal titleholders of certain property previously owned by Alexander and Rosemary Butcher as tenants by the entirety. After eight years of proceedings in multiple courts, the United States District Court for the Western District of Michigan granted the plaintiffs' motion for summary judgment, imposing a constructive trust upon the disputed property owned by the Butchers and later purchased by the condominium owners. The Butchers, LTDC, and HCDC (collectively the Butcher defendants) have appealed, challenging the imposition of the constructive trust. Another key issue on appeal, brought by the United States on behalf of the IRS, challenges the portion of the district court's decision holding that a federal tax lien encumbering the Butchers' property is subordinate to the plaintiffs' constructive trust. For the reasons set forth below, we **REVERSE** the judgment of the district court regarding the status of the IRS's tax lien, but **AFFIRM** its judgment in all other respects.

## I. BACKGROUND

### A. Factual history

Alexander and Rosemary Butcher sought to develop resort condominiums in northern Michigan through LTDC, a Michigan corporation owned solely by Alexander. On June 30, 1978, Cedar Cove, a Michigan limited partnership in which Alexander was a partner, conveyed four parcels of land, consisting of approximately 100 acres in Little Traverse Township, to Alexander and Rosemary for the price of $640,000. By warranty deed dated July 6, 1978, the Butchers conveyed two of these four parcels, consisting of 40.81 acres, to LTDC. Both the June 30 and July 6 deeds were recorded on July 12, 1978. That same day, Alexander signed a warranty deed in his capacity as president of LTDC, conveying the unmortgaged portion of the property, consisting of 17.83 acres, back to the Butchers as tenants by the entirety. This deed was recorded on July 14, 1978.

At Alexander's request, Lawyers Title issued a title commitment to LTDC for the full 40.81 acres on July 18, 1978. Lawyers Title failed to discover the 17.83 acre conveyance from LTDC back to the Butchers, presumably because the July 12, 1978 warranty deed had been recorded only four days earlier. Alexander also failed to inform Lawyers Title of its existence. As a result, the title commitment erroneously listed LTDC as the owner of all 40.81 acres, which included the 17.83 acres no longer in LTDC's name.

Thereafter, Alexander, on behalf of LTDC, executed a master deed dated November 1, 1978 that created Harbor Cove Phase II on the entire 40.81 acres. From 1981 to 1984, LTDC constructed and sold condominiums on portions of the acreage that included the 17.83 acres in dispute, nine of which were sold to the plaintiffs or their predecessors-in-interest.

On May 8, 1984, Alexander formed HCDC. He was the majority stockholder, president, and a director of this new

statute of limitations. *See id*. at 71. Consequently, Rosemary's substitution into the case was appropriate.

### I. Other arguments raised by the Butcher defendants

The Butcher defendants have also raised arguments that (1) the statute of frauds prevents imposition of the constructive trust, (2) the bankruptcy court had no authority to transfer the constructive trust claim to the Western District of Michigan because the claim had been rendered moot, (3) the action was rendered moot when Alexander was substituted out of the case, (4) there is no unjust enrichment when a title insurer pays its policy claims, (5) equity has no jurisdiction where the legal relief is adequate, (6) there can be no constructive trust because the plaintiffs never acquired good title, and (7) if Alexander obtained the 17.83 acres improperly, then he did not have any interest to quitclaim to Rosemary. Most of these arguments are poorly articulated and are variations of other arguments that have already been addressed. All are totally without merit. Accordingly, after carefully reviewing the arguments and finding them unavailing, we affirm the district court on these issues for the reasons set forth in its order and judgment without further discussion.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the portion of the district court's judgment holding that the IRS's tax lien is subordinate to the plaintiffs' constructive trust. In all other respects, we **AFFIRM** the judgment of the district court.

*v. Lowery*, 924 F.2d 731, 732 (7th Cir. 1991) ("A party may waive a defense of insufficiency of process by failing to assert it seasonably in a motion . . . Where a defendant leads a plaintiff to believe that service is adequate . . . courts have not hesitated to conclude that the defense is waived.")

Moreover, Rosemary had been previously served with the amended complaint in her capacity as a personal representative of Alexander's estate. She had notice and an opportunity to be heard. In fact, Rosemary, in her individual capacity, filed a twenty-one page response on February 19, 1999, arguing that the plaintiffs should not be granted summary judgment.

Rosemary was also properly added as a defendant because Alexander's interest in the property, which is the subject of the suit, was transferred to her during the course of the litigation. Rule 25(c) of the Federal Rules of Civil Procedure provides as follows:

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

"Rule 25(c) does not require that anything be done after an interest has been transferred." *Luxliner P.L. Export, Co. v. RDI/Luxlinder, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) (internal quotation marks and citation omitted). Moreover, "[a]lthough substitution is usually effected during the course of litigation, substitution has been upheld even after litigation has ended as long as the transfer of interest occurred during the pendency of the case." *Id*. The addition of Rosemary as a defendant was based upon her receipt of Alexander's interest after the case was filed against Alexander. Because the plaintiffs' claim against Rosemary is a continuation of their claim against Alexander, that claim is not barred by the applicable

corporation. In late October of 1984, Alexander signed a warranty deed on behalf of LTDC, purporting to convey 12.60 of the 17.83 acres to HCDC. Alexander, as president of HCDC, then signed a master deed creating Harbor Cove Phase III on the 12.60 acres. He also granted a mortgage to Northwestern Savings and Loan Association on this acreage in order to secure a construction loan. After Lawyers Title issued a title commitment for the transaction, HCDC constructed condominiums on the development. It began selling the condominiums in December of 1985, three of which were sold to the plaintiffs or their predecessors-in-interest.

In the deeds conveying the condominiums to the plaintiffs, Alexander, acting as president of both LTDC and HCDC, represented that one or the other of those entities held title to the particular condominium being sold. He also stated under oath on several occasions that LTDC was the owner of the Phase II property and that HCDC was the owner of the Phase III property.

In August of 1988, the IRS issued an assessment against the Butchers for approximately $61,000 in unpaid federal income taxes that arose from the taxable year 1986. On September 9, 1988, the United States, acting on behalf of the IRS, filed a tax lien against the Butchers' property, seeking to attach Rosemary's and Alexander's interest in the 17.83 acres. The unpaid balance of the tax liability now exceeds $150,000.

On March 1, 1991, Rosemary filed for bankruptcy. Soon thereafter, the condominium owners learned of the July 12, 1978 conveyance from LTDC to the Butchers. On September 17, 1991, Rosemary amended her bankruptcy schedules to claim ownership of the 17.83 acres. Prior to that date, the Butchers had taken no action to claim title to any portion of the property. In fact, it was the plaintiffs, not the Butchers, who have paid the property taxes on the 17.83 acres over the years. Alexander quitclaimed his interest in the 17.83 acres

to Rosemary on October 31, 1991.  He died in December of that year.

## B.   Procedural history

Rosemary filed her Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan.  Seven and a half months later, Lawyers Title and the condominium owners to whom Lawyers Title issued title insurance policies sued Alexander, LTDC, HCDC, and the IRS in Emmet County Circuit Court.  The plaintiffs did not sue Rosemary because she was under the protection of the bankruptcy court.

After being served with the complaint, the IRS removed the state court action to the United States District Court for the Western District of Michigan on November 18, 1991.  The district court entered an order staying the Western District action while the plaintiffs pursued an adversary proceeding in Rosemary's bankruptcy case.  In both actions, the plaintiffs sought the imposition of a constructive trust.

Subsequent to Alexander's death in late 1991, the Butcher defendants moved to dismiss the district court action because Alexander's estate had not been substituted as a party following his death.  The plaintiffs responded by moving to transfer venue to the bankruptcy court.  On August 16, 1993, the district court denied the Butcher defendants' motion to dismiss, holding that the order staying the district court action pending the adversary proceeding in the bankruptcy court tolled the time limit for substituting the estate of Alexander into the suit under Rule 25(a)(1) of the Federal Rules of Civil Procedure. (This part of the district court's order is not being contested on appeal.)  The district court also granted the plaintiffs' motion to transfer venue to the  Bankruptcy Court for the Eastern District of Michigan in the same order.

Both the plaintiffs' Western District action and Rosemary's bankruptcy proceeding were consolidated on November 18, 1993 in the bankruptcy court.  On February 11, 1994, the

served with a summons and copy of the amended complaint. This argument was first raised in their motion for reconsideration, following the award of summary judgment to the plaintiffs.  The district court partially agreed with this argument and ordered the plaintiffs to serve Rosemary with a summons and  copy of the amended complaint.  It then gave her an opportunity to respond to the plaintiffs' arguments. Shortly thereafter, the Butcher defendants filed a supplemental motion for reconsideration. In that motion, they argued that the district court's order, which imposed the constructive trust, was void because the court had no authority to assert personal jurisdiction over Rosemary after entering a final judgment.   Contrary to the Butcher defendants' arguments, the district court had the authority to amend its judgment based on its mistaken belief that Rosemary had been served in her individual capacity. *See Kingvision Pay-Per-View Ltd., v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (holding, in a case where the plaintiff had argued that "the district court lacked jurisdiction to amend its judgment more than ten days after entry, because that is the time limit under Federal Rule of Civil Procedure 59," that a district court can amend its judgment because of mistake or inadvertence months after judgment has been entered pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.)  We agree with this reasoning, and conclude that the district court correctly rejected this argument.

With respect to personal jurisdiction, the district court obtained jurisdiction over Rosemary when Robert Butcher, counsel for the Butcher defendants, received a copy of the amended complaint on Rosemary's behalf.  He had agreed to accept service of the amended complaint on her behalf and to return a waiver of service of the summons.  Rosemary's argument that acceptance of the amended complaint by Robert Butcher was contingent upon her receipt of additional time to respond to the district court's order should have been immediately raised and clearly articulated in a proper motion. Because she failed to do so, this argument is procedurally defaulted. *See Trustees of Central Laborers' Welfare Fund*

*Revenue Service*, No. 91-30253-RV, 1991 WL 327960 (N.D. Fla. Dec. 13, 1991) (same). We agree with the reasoning of these decisions, and conclude that the plaintiffs' technical defect did not preclude removal in this case.

### G. The plaintiffs' constructive trust claim is not barred by the statute of limitations

The Butcher defendants also argue that the plaintiffs' constructive trust claim is barred by the statute of limitations, which they insist is six years. The applicable statute of limitations, however, is fifteen years for the recovery of land. *See* M.C.L. § 600.5801(4); *Gorte v. Department of Transportation*, 507 N.W.2d 797, 799 (Mich. Ct. App. 1993). Because the first deed was not delivered to the plaintiffs until October 22, 1981, and because the plaintiffs brought suit in state court against the defendants on October 16, 1991, the plaintiffs' constructive trust claim is not barred by the statute of limitations.

The Butcher defendants, on the other hand, contend that the accrual date of the plaintiffs' claim is July 12, 1978, the date on which LTDC conveyed title to the Butchers. This contention is erroneous because the plaintiffs' claim did not accrue until they became entitled to the possession of the land, which was when they received their warranty deeds. *See* M.C.L. § 600.5829(5) ("[T]he claim accrues when the claimant or the person under whom he claims first becomes entitled to the possession of the premises under the title upon which the entry or action is founded."). In any event, even an accrual date of July 12, 1978 is still within fifteen years of October 16, 1991. Accordingly, we affirm the district court on this issue.

### H. The district court's order granting summary judgment is valid as to Rosemary

The Butcher defendants next contend that the constructive trust is void as against Rosemary because it was imposed on December 14, 1998, at which time Rosemary had not yet been

bankruptcy court issued an order substituting the representatives of Alexander's estate, being Rosemary and her brother-in-law Robert E. Butcher, for Alexander.

In late November of 1994, the bankruptcy court granted the plaintiffs' motion for summary judgment, imposing a constructive trust over the 17.83 acres for the benefit of the condominium owners. The bankruptcy court also concluded that the constructive trust related back to 1978, thus predating the IRS's tax lien that arose against the Butchers in 1988.

The defendants appealed the bankruptcy court's ruling to the United States District Court for the Eastern District of Michigan. On July 31, 1995, the bankruptcy court's award of summary judgment to the plaintiffs was reversed by the district court. The district court's decision was based upon the case of *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994), in which this court held that a bankruptcy court may not impose a constructive trust over estate property. *See id.* at 1452-53. Because of *In re Omegas Group*, the district court concluded that the proper remedy would be to have the debt declared nondischargeable. The case was then remanded to the bankruptcy court.

Upon remand, the bankruptcy court, still believing that a constructive trust was the appropriate remedy, entered an order transferring the plaintiffs' claim for a constructive trust over Rosemary's nonbankruptcy interest (being the interest that she acquired from Alexander) back to the United States District Court for the Western District of Michigan. It also lifted the automatic stay, which prohibits actions against debtors in bankruptcy, in order to permit the plaintiffs to add Rosemary as a defendant and to add a fraudulent conveyance count against the Butchers.

After the case was transferred back to the Western District, the plaintiffs in fact moved to amend their complaint to add Rosemary as a defendant and to add a fraudulent conveyance

count against the Butchers. The motion was granted. All of the parties then filed cross-motions for summary judgment. Concluding that the facts of the case compelled the imposition of a constructive trust, the district court granted the plaintiffs' motion. It ruled that the Butcher defendants' arguments relating to standing, jurisdiction, and the statute of limitations were without merit. The district court also held that the constructive trust arose as of July 12, 1978, which was the date of the conveyance of the 17.83 acres by LTDC to Rosemary and Alexander. Because the district court retroactively applied the constructive trust as of that date, it concluded that the 1988 federal tax lien was subordinate to the plaintiffs' interest in the property and therefore ineffective.

The Butcher defendants filed a motion for reconsideration, arguing that a constructive trust should not have been imposed over Rosemary's interest (Rosemary's interest refers solely to her nonbankruptcy interest unless otherwise stated) because she had not been served with a summons and a copy of the amended complaint. Acknowledging this oversight, the district court ordered the plaintiffs to serve Rosemary with a summons and a copy of the amended complaint within fourteen days. It further ordered that Rosemary file a response, setting forth her reasons why a constructive trust should not be imposed over her interest in the 17.83 acres.

The United States also filed a motion to clarify and reconsider, arguing that the district court appeared to be placing the constructive trust over both Rosemary's bankruptcy and nonbankruptcy interests. A supplemental motion for reconsideration was then filed by the Butcher defendants, arguing that summary judgment should be denied, but acknowledging that Rosemary's attorney had received a summons and a copy of the amended complaint pursuant to an agreement with opposing counsel. Shortly thereafter, Rosemary filed a twenty-one page response, setting forth her reasons why a constructive trust should not be imposed.

contracts and deeds that the plaintiffs rely upon are void and therefore create no legal or equitable rights in the property. These arguments are unavailing because they do not address the elements that constitute standing.

To satisfy the constitutional requirement of standing, a plaintiff must establish three elements: "(1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue—the injury must be fairly traceable to the defendant's action; and (3) likelihood that the injury would be redressed by a favorable decision of the Court." *Southwestern Pa. Growth Alliance v. Browner*, 144 F.3d 984, 988 (6th Cir. 1998) (internal quotation marks and citation omitted). The plaintiffs have alleged injury in fact in the form of defective title, which is traceable to the Butcher defendants' conduct, and the injury can be redressed through the imposition of a constructive trust. Lawyers Title has standing pursuant to the subrogation clauses in the title insurance policies it issued to the condominium owners. We thus affirm the district court on this issue.

## F.    The case could be removed despite the fact that the plaintiffs named the IRS in their suit rather than the United States

The Butcher defendants next argue that because the plaintiffs named the IRS in their original complaint and in their amended complaint rather than the United States, the action cannot be removed to federal court pursuant to 28 U.S.C. § 1444. This section allows for the removal of any case where suit is brought against the United States regarding one of its liens. Even though the Butcher defendants are correct that the IRS has no capacity to be sued, and that the plaintiffs should have named the United States as a party instead of the IRS, such defects are not fatal. *See Labry v. Internal Revenue Serv.*, 940 F. Supp. 148, 149 (E.D. La. 1996) (holding that although the United States rather than the IRS was the proper party, a misnomer does not preclude removal under 28 U.S.C. § 1444); *Bernard v. Internal*

in the Western District of Michigan lacked jurisdiction to rule on the constructive trust claim. The plaintiffs counter that the bankruptcy court's transfer of the constructive trust claim back to the district court was proper because the bankruptcy court can share its jurisdiction.

Section 1334(e) provides as follows: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."   In the first place, the bankruptcy court only transferred the plaintiffs' constructive trust claim on Rosemary's *nonbankruptcy* interest to the Western District of Michigan. Because Rosemary's interest was acquired from Alexander long after she had already filed for bankruptcy, this transfer of jurisdiction does not offend § 1334(e). Second, in *Noletto v. Nations Bank Mortgage (In re Noletto)*, 244 B.R. 845 (S.D. Ala. 2000), the district court held that § 1334(e) must be read narrowly in order to avoid a conflict with the other bankruptcy venue provisions. *See id*. at 852-53. The district court in *Cook v. Cook*, 220 B.R. 918 (Bankr. E.D. Mich. 1997), also addressed § 1334(e) and concluded that this section does not prevent a bankruptcy court from transferring selected issues to another court. *See id*. at 922. We agree with the decisions in *In re Noletto* and *Cook* and hold that a bankruptcy court can share its jurisdiction with other courts. Accordingly, we affirm the district court on this point.

**E.   The plaintiffs have standing to sue for a constructive trust**

The Butcher defendants argue that the plaintiffs have no standing to bring or maintain their cause of action for multiple reasons, including the lack of a demonstrable chain of title, the non-appearances of several plaintiffs, the sale of some of the condominium units prior to initiating the cause of action, the purchase or sale of condominium units with knowledge of the title defects, attempted double recovery, and that the

The arguments made in the Butcher defendants' motion for reconsideration, their supplemental motion for reconsideration, and the United States's motion to clarify were all rejected, except for the argument that the constructive trust was overbroad. Because the scope of the constructive trust was unclear in its initial order, the district court declared in a supplemental order  that the scope of the constructive trust would be limited to the nonbankruptcy portion of Rosemary's overall interest in the 17.83 acres. The Butcher defendants then filed another motion to reconsider, which was denied. This appeal followed.

## II. ANALYSIS

### A.   Standard of review

The Butcher defendants and the IRS are appealing various legal issues relating to the district court's grant of summary judgment on the plaintiffs' constructive trust claim.  This court reviews de novo a district court's grant of summary judgment. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).

### B.   The district court's imposition of the constructive trust was proper

One of the Butcher defendants' primary arguments is that the district court erred when it imposed a constructive trust over Rosemary's interest in the 17.83 acres. The plaintiffs counter that a constructive trust was necessary in order to prevent Rosemary from being unjustly enriched by her and Alexander's inequitable conduct.

Under Michigan law, the imposition of a constructive trust is appropriate in order "to do equity or to prevent unjust enrichment. . . .   Hence, such a trust may be imposed when property has been obtained through fraud, misrepresentation, concealment, . . . or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property. . . ." *Kammer Asphalt Paving*

*Co. v. East China Township Schs.*, 504 N.W.2d 635, 641-42 (Mich. 1993) (internal quotation marks and citations omitted).

Based on the following sequence of events, the district court imposed a constructive trust in order to prevent the Butchers from being unjustly enriched at the plaintiffs' expense: On July 12, 1978, the Butchers recorded warranty deeds conveying the 17.83 acres from Cedar Cove to the Butchers and from the Butchers to LTDC. That same day, Alexander, in his capacity as president of LTDC, conveyed the 17.83 acres back to himself and Rosemary as tenants by the entirety. Thereafter, the Butchers, through their corporate entities, secured approval from the State of Michigan for the necessary building permits, obtained financing for the projects through various loans and mortgages, and sold the finished condominium units to the plaintiffs or their predecessors in title. During the process of obtaining the proper permits and financing, the Butchers, both individually and through LTDC and HCDC, represented to the State of Michigan, to the lenders, and to the purchasers that the 17.83 acres was owned by either LTDC or HCDC. Because the Butchers did not claim any individual ownership interest in the 17.83 acres until after Rosemary had filed her bankruptcy petition, the condominium owners had no reason to doubt the soundness of their insured legal title to the acreage in question. They also paid the property taxes in the intervening years.

The Butchers argue that the district court did not find that they had committed fraud. A constructive trust, however, may be imposed without a finding of fraud. *See McCreary v. Shields*, 52 N.W.2d 853, 856 (Mich. 1952) (holding that a constructive trust is imposed in order to prevent injustice, and that such a trust may be imposed when the circumstances show that it would be inequitable for the holder of legal title to retain the property). Because the Butchers participated or acquiesced in actions certifying LTDC's and HCDC's ownership of the 17.83 acres when they knew that they had retained legal title to the property as individuals, and because the Butchers stood silent while the plaintiffs paid the property

The Butchers further argue that the plaintiffs are not entitled to the benefit of a constructive trust over Rosemary's interest because she is not liable for the actions of Alexander, LTDC, and HCDC. This argument is unavailing because Rosemary stands in the shoes of Alexander with respect to her nonbankruptcy interest in the 17.83 acres, and if Alexander was not entitled to retain his interest in the property, then that interest is subject to a constructive trust despite the fact that Rosemary now owns it. *See Florida East Coast Railway Company v. Patterson*, 593 So.2d 575, 577 (Fla. Dist. Ct. App. 1992) ("[O]ne who accepts a quitclaim deed is conclusively presumed to have agreed to take the title subject to all risks as to defects . . . .") (citation and internal quotation marks omitted).

Moreover, even if Rosemary's interest in the property was not burdened by the actions of Alexander, a constructive trust could still be imposed over her interest because she herself does not have clean hands. Rosemary acquiesced in the July 12, 1978 conveyance from LTDC to herself and her husband, she did not inform the plaintiffs of the July 12 conveyance, and she allowed the plaintiffs to pay the taxes on the property without disclosing that she and Alexander held legal title. The fact that Rosemary did not play as big a role as Alexander in deceiving and misleading the plaintiffs is not determinative.

In short, Alexander had a separate interest in the 17.83 acres that did not become part of Rosemary's bankruptcy estate either at the time she filed her bankruptcy petition or when she acquired Alexander's interest through his quitclaim deed. Accordingly, we affirm the district court's ruling on this issue.

    2.    *The bankruptcy court can share its jurisdiction*

In a related argument, the Butchers claim that because 28 U.S.C. § 1334(e) gives the bankruptcy court exclusive jurisdiction over the debtor's property, that the district court

(providing that a conveyance of an entireties interest by one spouse to the other terminates the entireties interest). Because Alexander did not quitclaim his interest in the 17.83 acres until after 180 days had passed since the filing of Rosemary's bankruptcy petition, however, Rosemary possessed this interest outside of bankruptcy. *See generally,* 11 U.S.C. § 541(a)(5)(A) (providing that if a debtor receives property within 180 days of her bankruptcy petition, then the interest becomes property of the estate). At this point, Rosemary had an interest in the 17.83 acres that was under the control of the bankruptcy trustee, and she had an interest in the 17.83 acres that was held outside of bankruptcy.

There was no merger of these separate interests. In fact, during the bankruptcy proceedings, the Butchers argued that Rosemary held a separate, nonbankruptcy interest in the 17.83 acres. The Butchers, however, are not judicially estopped from now taking a different position because there is no evidence that the Butchers were successful with this argument, which is a necessary element of judicial estoppel. *See Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990) (observing that a party is not bound by an unsuccessful argument in a prior proceeding).

Consequently, after the bankruptcy court transferred the constructive trust count to the district court in the Western District of Michigan and lifted the automatic stay, the district court had jurisdiction to adjudicate the constructive trust issue with respect to Rosemary's nonbankruptcy interest in the 17.83 acres. The Butchers' argument that the district court did not have jurisdiction to impose a constructive trust on property that Rosemary acquired postpetition because the constructive trust was based upon the plaintiffs' prepetition claims ignores the fact that the trust was imposed by a district court, not a bankruptcy court, that the automatic stay had been lifted, and that the constructive trust only applies to Rosemary's nonbankruptcy interest.

taxes on the 17.83 acres, the district court's imposition of the constructive trust over Rosemary's interest was proper. *See Kren v. Rubin*, 61 N.W.2d 9, 11 (Mich. 1953) (observing that a very strong justification for imposing a constructive trust arises when a party allows another to pay his property taxes).

The Butchers also argue that they were under no obligation to expressly inform the plaintiffs about the July 12, 1978 conveyance from LTDC to the Butchers. Assuming this to be true, they were still under an obligation not to deceive and mislead the plaintiffs by warranting that LTDC and HCDC owned the property and by allowing the plaintiffs to pay the property taxes.

Finally, the Butchers argue that imposing a constructive trust is inappropriate because the plaintiffs' remedy is against Lawyers Title for negligently failing to discover the July 12, 1978 conveyance back to the Butchers. The Butchers' misleading and deceptive conduct, however, will not be rewarded or justified simply because Lawyers Title failed to catch it. *See Grzesick v. Cepela*, 603 N.W.2d 809, 815 (Mich. Ct. App. 1999) ("A comparative negligence defense is inapplicable to a claim of intentional tort"); *Law Offices of Steven D. Smith, P.C. v. Borg-Warner Sec. Corp.*, 993 P.2d 436, 444 (Alaska 1999) ("[M]ere negligence of the plaintiff is not a defense to an intentional tort.") (internal quotation marks omitted). Although the facts may not conclusively demonstrate fraud, Alexander's and Rosemary's failure to inform Lawyers Title of the July 12, 1978 conveyance back to themselves just before Alexander requested Lawyers Title to issue a title commitment to LTDC that included the 17.83 acres is a strong indication of fraud. Consequently, we affirm the district court's decision to impose a constructive trust.

## C. The constructive trust does not defeat the IRS's tax lien

The district court determined that the constructive trust should be retroactive to July 12, 1978, the date of the deed from LTDC to the Butchers. Accordingly, the district court held that the Butchers did not have an interest in the property to which the 1988 tax lien could attach. It thus concluded that the tax liens were subordinate to the plaintiffs' beneficial interest in the property arising from the constructive trust. The United States appeals this ruling, arguing that any constructive trust claim that the plaintiffs may have had does not affect the validity of the federal tax lien.

Title 26 U.S.C. § 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." "The threshold question . . . in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had property or rights to property to which the tax lien could attach." *Aquilino v. United States*, 363 U.S. 509, 512 (1960) (internal quotation marks omitted). "[A]lthough state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed." *United States v. Irvine*, 511 U.S. 224, 238 (1994).

Under Michigan law, a "constructive trust is strictly not a trust at all, but merely a remedy administered in certain fraudulent breaches of trusts." *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.*, 244 N.W. 138, 140 (Mich. 1932). Accordingly, a constructive trust does not arise until a judicial decision imposes such a trust under Michigan law. The federal tax lien in the present case arose in 1988. Because the constructive trust was not judicially imposed over the 17.83 acres until a decade later, the government argues that the federal tax lien should be given precedence over the plaintiffs' interest.

*Arango v. Third National Bank (In re Arango)*, 992 F.2d 611, 614 (6th Cir. 1993). By recognizing an interest in entireties property that is part of a debtor's bankruptcy estate, *In re Arango* implicitly recognized the corresponding interest that would not be part of the debtor's estate.

To shed further light on the issue of how the bankruptcy of one spouse affects entireties property, a leading bankruptcy treatise provides that a "trustee can sell [a debtor's interest in entireties property], subject to the spouse's right of first refusal. The non-filing spouse receives his or her share of the proceeds and the trustee keeps the balance for distribution." Daniel R. Cowans, Bankruptcy Law and Practice § 7.5, at 290 (7th ed. 1998); *Finneran v. Associates Fin. Servs. (In re Blair)*, 151 B.R. 849, 851 (Bankr. S.D. Ohio 1992), *aff'd*, 33 F.3d 54 (6th Cir. 1994) (observing that "[d]ivision of entireties equity between the estate and the debtor's spouse or co-owner is supported by a majority of courts."); 11 U.S.C. § 363(j), (h) (providing that "the trustee shall distribute to the debtor's spouse" his or her portion of the proceeds from the sale of tenancy-by-the-entirety property).

In arguing that there is no separate property interest that can be reached by creditors of only one of the entireties tenants, the Butchers rely heavily upon the case of *Craft v. United States*, 140 F.3d 638 (6th Cir. 1998). The *Craft* case is distinguishable, however, because the property at issue was not part of a bankruptcy estate. Consequently, this court did not consider how a bankruptcy filing might affect the respective interests in entireties property of a debtor and non-debtor spouse. In contrast, this was precisely the situation in both *Grosslight* and *Arango*.

The Butchers' other theory concerning the Western District of Michigan's alleged lack of jurisdiction relates to Alexander's quitclaiming his portion of the 17.83 acres to Rosemary on October 31, 1991, which was seven months after Rosemary had filed for bankruptcy. This conveyance terminated the tenancy by the entirety. *See* M.C.L. § 557.101

(providing that the property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case").  Moreover, in *In re Grosslight*, 757 F.2d 773 (6th Cir. 1985), this court discussed Michigan's tenants-by-the-entirety concept in relation to federal bankruptcy law as follows:

> Michigan is among the minority of states retaining the common law tenancy by the entirety.  Tenants by the entirety, who must be husband and wife, hold under a single title with right of survivorship.  Neither husband nor wife acting alone can alienate any interest in the property, nor can the creditors of one levy upon the property; but their joint creditors can reach entireties property. . . .  It is now established law that [11 U.S.C. § 541(a)] brings entireties property into the bankruptcy estate.

*Id*. at 775 (citations omitted).

With respect to the existence of separate interests in entireties property, this court has made the following ruling regarding Tennessee's similar property regime:

> Under Tennessee law, Arango does not, as an individual, have a present possessory interest in entireties property.  Instead, Arango and his wife, as a unit which is separate and apart from them as individuals, have a present possessory interest in entireties property.  The practical effect of Tennessee's legal construct is that Arango has the right to use and enjoy entireties property, at least until his wife may predecease him or he and his wife, together, convey their present possessory interest, despite the legal belief that Arango does not have a present possessory interest.  Under the Bankruptcy Code, on the other hand, Arango does have a present possessory interest in entireties property which is considered part of his individual bankruptcy estate under section 541(a)(1).

Even if Michigan law allows the doctrine of "relation back" to give the beneficiary of a constructive trust priority over private intervening interests, this would not be determinative as to the IRS.  The priority of a federal tax lien against competing claims is governed by federal law.  *See United States v. Dishman Independent Oil, Inc.*, 46 F.3d 523, 526 (6th Cir. 1995) ("It is undisputed that when a federal lien is involved, the relative priority between competing liens is a question of federal law determined by the principle 'the first in time is the first in right.'").  Federal law, however, makes no provision for the subordination of a tax lien through the use of the "relation back" doctrine.  *See id*. at 527; *United States v. Security Trust & Savings Bank of San Diego*, 340 U.S. 47, 50 (1950) (holding that a property right that comes into existence by court action, such as a judgment lien, does not relate back to some earlier date to destroy the priority of a federal tax lien); *Drye v. United States*, __ U.S. __, 120 S. Ct. 474, 478 (1999) (holding that a state disclaimer law, which applies retroactively and treats the disclaimant as having predeceased the decedent, does not defeat a federal tax lien that has already attached to the disclaimant's property).

Only competing claims that meet the federal standard of "choateness" before the federal tax lien arises can prime a federal tax lien.  *See United States v. Equitable Life Assurance Society of the United States*, 384 U.S. 323, 328 (1966) (holding that a federal tax lien was entitled to priority over a mortgagee's inchoate claim for attorney's fees).  A state-created lien is choate only when "there is nothing more to be done," i.e., "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. City of New Britain*, 347 U.S. 81, 84 (1954).  In *Dishman*, the issue was "whether a state attachment lien has priority over a federal tax lien if the property subject to the liens was attached prior to the time the federal tax lien was filed, although final judgment on the attachment lien was not handed down until after the federal tax lien was filed." *Dishman*, 46 F.3d at 526.  This court held that the state attachment lien was subordinate to the federal tax lien

because the state lien only became choate upon the state judgment, which came after the federal tax lien was filed.  *See id*. at 526-27.  Furthermore, in *In re Omegas Group*, 16 F.3d 1443 (6th Cir. 1994), this court held that "because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment "impressing" defendant's property or assets with a constructive trust."  *Id* at 1451.

Based on the reasoning in *Dishman* and *In re Omegas Group*, the plaintiffs' constructive trust claim only became choate when the district court granted judgment in 1998.  The district court, however, relied upon the following three cases for its holding that a constructive trust can be retroactively applied to defeat a federal tax lien: *FTC v. Crittenden*, 823 F. Supp. 699 (C.D. Cal. 1993), *aff'd*, 19 F.3d 26 (9th Cir. 1994), *Reliance Insurance Co. v. Brown*, 40 B.R. 214 (W.D. Mo. 1984), *TMG II v. United States*, 778 F. Supp. 37 (D.D.C. 1991), *aff'd in part and rev'd in part*, 1 F.3d 36 (D.C. Cir. 1993).  We find these cases unpersuasive because they fail to explain how a constructive trust that is judicially imposed after the filing of a federal tax lien can retroactively meet the federal standard of "choateness," thus priming the lien.  Furthermore, these cases are inconsistent with this court's decisions in *Dishman* and *In re Omegas Group*.  The district court's only mention of *In re Omegas Group* was in a footnote supporting the proposition that a district court may impose a constructive trust, and it did not mention *Dishman* at all.

Although we agree that the equitable remedy as between the Butchers and the plaintiffs is to impose a constructive trust, the analysis is different with respect to the IRS.  The IRS properly perfected its interest by filing a tax lien against the Butchers' property.  On the other hand, the plaintiffs, directly or indirectly, exercised a lack of diligence in failing to discover the July 12, 1978 conveyance back to the Butchers.  It was this lack of diligence that contributed to the present legal quagmire.  Consequently, from an equity standpoint, we

believe that it would be unfair to the IRS, a party without "fault," to prime the IRS's choate tax lien by retroactively applying a constructive trust in favor of the plaintiffs.  If the condominium owners wish to recover for the monetary loss caused by the tax lien, they might have a remedy against Lawyers Title.

In summary, a judicially-created equitable remedy cannot be applied retroactively to defeat a choate federal tax lien.  Also, as between the plaintiffs and the IRS, the equities favor the IRS.  We therefore reverse the ruling of the district court on this issue.

**D.   The district court for the Western District of Michigan had jurisdiction over the nonbankruptcy portion of Rosemary's interest in the 17.83 acres, and neither Alexander's quitclaim deed nor his subsequent death extinguished the plaintiffs' constructive trust claim**

   *1.   The interest that Rosemary received from Alexander's quitclaim deed was not part of her bankruptcy estate*

The Butchers argue that because Rosemary and Alexander owned the 17.83 acres as tenants by the entirety, all of the property became part of her bankruptcy estate when she filed her bankruptcy petition.  Alternatively, they claim that Rosemary became the sole owner of the property when Alexander quitclaimed his interest in the property to her shortly before his death.  Either way, they argue that the district court in the Western District of Michigan lacked jurisdiction over this dispute because exclusive jurisdiction over the entire property resided in the bankruptcy court for the Eastern District of Michigan.  We disagree.

As to the Butchers' tenants-by-the-entirety argument, there is no doubt that Rosemary's tenancy interest in the 17.83 acres became part of her bankruptcy estate when she filed for bankruptcy on March 1, 1991.  *See* 11 U.S.C. § 541(a)(1)